**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**DEC 9 1999**

**PATRICK FISHER**
**Clerk**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

HENRY T. SOUTHWAY, aka
Butch Southway; SOUTHWAY
CONSTRUCTION COMPANY, INC.;
DOUGLAS HOUGHTON; RANDY
THURSTON; J. E. LOSAVIO, JR.; RUSS
GRAY, dba Gray Real Estate,

    Plaintiffs-Appellees,

v.

CENTRAL BANK OF NIGERIA;
REPUBLIC OF NIGERIA,

    Defendants-Appellants,

and

LAW FIRM OF KIRK P. BROWN, P.C.;
KIRK PATTERSON BROWN, dba
The Communications Connection,
individually; HELEN TOMICICH, dba
The Communications Connection,
individually,

    Defendants.

No. 98-1112

---

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
(D.C. No. 96-B-2540)
(994 F. Supp. 1299)

---

Joseph E. Losavio, Jr., Law Offices of J. E. Losavio, Pueblo, Colorado, for Plaintiffs-Appellees.

Steven David Plissey (Michael A. Williams with him on the brief), of Williams, Youle & Koenigs, P.C., Denver, Colorado, for Defendants-Appellants.

---

Before **TACHA**, **HOLLOWAY**, and **BALDOCK**, Circuit Judges.

---

**BALDOCK**, Circuit Judge.

---

The general immunity provision of the Foreign Sovereign Immunities Act of 1976 (FSIA), 28 U.S.C. §§ 1330, 1602-1611, provides:

> Subject to existing international agreements to which the United States is a party at the time of enactment of this Act, a foreign state shall be immune from the jurisdiction of the courts of the United States and of the States except as provided in sections 1605 to 1607 of this chapter.

28 U.S.C. § 1604.  The FSIA provides the exclusive means by which federal and state courts may obtain subject-matter jurisdiction over civil suits involving foreign states, their agencies, or instrumentalities.  Argentine Republic v. Amerada Hess Shipping Corp., 488 U.S. 428, 443 (1989).  In this interlocutory appeal, we address two issues involving the federal district court's subject-matter jurisdiction under the FSIA:  (1) Whether the FSIA prohibits the district court from exercising subject-matter jurisdiction over civil actions against foreign sovereigns based on a pattern of racketeering activity under the Racketeer Influenced and Corrupt Organizations Act of 1970 (RICO), 18 U.S.C. §§ 1961-1968; and, if not, (2) Whether the FSIA's commercial activity exception, 28 U.S.C. § 1605(a)(2),

2

applies to the alleged racketeering activity of Defendants Central Bank of Nigeria (CBN) and Republic of Nigeria (RN), thus obviating their sovereign immunity from suit under the FSIA? We answer the first question "no," and the second question "yes."

## I.

The detailed facts giving rise to this action are well stated in the district court's opinion, Southway v. Central Bank of Nigeria, 994 F. Supp. 1299, 1302-04 (D. Colo. 1998), and we need not repeat them here. Suffice it to say that this action arose from an alleged scheme in which numerous individuals, including officials of Defendants CBN and RN, sought to defraud Plaintiffs, a group of Colorado investors. Purported members of the Nigerian National Petroleum Company (NNPC) allegedly solicited Defendant Kirk Brown, a Pueblo, Colorado attorney, to assist them in collecting $21.3 million from an "over-invoiced" contract for oil drilling machinery. In exchange for Brown's assistance, the NNPC members agreed to pay Brown a percentage of the proceeds. Between November 1995 and April 1996, numerous communications occurred between Brown and purported representatives of CBN, RN, and NNPC. Brown and his wife, Helen Tomicich, recruited several Colorado investors to help them pay the "up-front costs," which CBN and RN officials demanded prior to the payoff. The Nigerians' offer turned out to be a scam in which the investors together lost over one-half million dollars. This lawsuit followed.

In their complaint against Defendants CBN and RN,[1] Plaintiffs invoked the district court's jurisdiction under the commercial activity exception to the FSIA. That section provides:

> (a) A foreign state shall not be immune from the jurisdiction of courts of the United States or of the States in any case–
> . . .
> (2) in which the action is based upon a commercial activity carried on in the United States by the foreign state; or upon an act performed in the United States in connection with a commercial activity of the foreign state elsewhere; or upon an act outside the territory of the United States in connection with a commercial activity of the foreign state elsewhere and that act causes a direct effect in the United States.

28 U.S.C. § 1605(a)(2). See also Verlinden B.V. v. Central Bank of Nigeria, 461 U.S. 480, 493 & n.20 (1983) (subject-matter jurisdiction under the FSIA depends on the existence of a specified exception to the FSIA). Plaintiffs alleged that Defendants CBN and RN "and others . . . conspired with one another to defraud and commit theft of money from the plaintiffs . . . by means of fraudulent and deceptive schemes," constituting commercial activity within the meaning of § 1605(a)(2). Plaintiffs further alleged that Defendants' scheme violated RICO, 18 U.S.C. §§ 1961-1962 & 1964. The predicate acts on which Plaintiffs based their civil RICO claims included, among others, mail fraud, 18 U.S.C. § 1341; wire fraud, 18 U.S.C. § 1343; and transfer of stolen property, 18 U.S.C. §§ 2314-2315.

---

[1] Plaintiffs did not name the purported members of the NNPC allegedly involved in the scheme, or the NNPC itself, as parties to their suit.

4

Defendants CBN and RN moved to dismiss Plaintiffs' complaint for lack of subject-matter jurisdiction. See Fed. R. Civ. P. 12(b)(1). According to Defendants, the FSIA did not provide the district court with jurisdiction over Plaintiff's civil RICO claims, because RICO requires such claims to be based on "indictable" acts. 18 U.S.C. § 1961(1)(B). Defendants argued that because a foreign sovereign is immune from criminal indictment under the FSIA, the predicate acts upon which Plaintiffs' based their civil RICO claims were not indictable. Thus, Defendants claimed Plaintiffs' civil RICO action necessarily failed. In the alternative, Defendants argued that the FSIA's commercial activity exception did not apply to their conduct because (1) the alleged scheme involved criminal activity in which commercial actors do not typically engage; (2) Defendants CBN and RN had no contractual relationship with Plaintiffs; and (3) the alleged scheme was based upon tortious conduct outside the FSIA's exceptions under 28 U.S.C. § 1605(a)(5)(B).

The district court denied Defendants' motion to dismiss, holding that (1) "the FSIA plainly confers jurisdiction over civil RICO actions against a foreign sovereign"; and (2) "the activity carried on by the Nigeria[n] defendants . . . [constituted] 'commercial activity'" within the meaning of the FSIA, thereby defeating Defendants' claim to sovereign immunity.[2] Southway, 994 F. Supp. at 1306-09. Defendants CBN and RN

_____

[2] All parties agree that CBN and RN are "foreign states" within the meaning of the FSIA. See 28 U.S.C. § 1603(a), (b) (the term "foreign state" includes agencies and

(continued...)

5

appealed, renewing their objections to the district court's jurisdiction.

The denial of a claim to sovereign immunity is immediately appealable under the collateral order doctrine.  See Affiliated Ute Citizens v. Ute Indian Tribe, 22 F.3d 254, 255-56 (10th Cir. 1994).  We review de novo the district court's determinations regarding subject-matter jurisdiction and sovereign immunity under the FSIA.  See Ordinance 59 Assoc. v. United States Dept. of the Interior Sec., 163 F.3d 1150, 1152 (10th Cir. 1998).  Like the district court, we accept the complaint's allegations as true and ask whether those allegations are sufficient to establish Plaintiffs' entitlement to proceed. Id.  Applying this standard, we affirm and remand for further proceedings.

## II.

Defendants CBN and RN first argue that the district court has no subject-matter jurisdiction over Plaintiffs' civil RICO claims under 18 U.S.C. § 1964(c).[3]  Plaintiffs' civil RICO claims are based on a pattern of racketeering activity under §§ 1961(1)(B) & 1962.  As applicable to this appeal, 18 U.S.C. § 1961(1)(B) defines "racketeering activity" as "any act which is indictable" under the federal mail fraud, wire fraud, or transfer of stolen property statutes, 18 U.S.C. §§ 1341, 1343, 2314-2315.  Defendants

---

[2](...continued)
instrumentalities of a foreign state).

[3]  Section 1964(c) provides in relevant part:  "Any person injured in his business or property by reason of a violation of section 1962 of this chapter may sue therefor in any appropriate United States district court and shall recover threefold the damages he sustains and the cost of the suit, including a reasonable attorney's fee . . . ."  18 U.S.C. § 1964(c).

assert that because foreign states, their agencies, and instrumentalities are immune from criminal indictment under the FSIA, the predicate acts upon which Plaintiffs' rely for their civil RICO claims are not "indictable."

Defendants' argument that the FSIA does not provide the district court with subject-matter jurisdiction over Plaintiffs' RICO-based civil claims rests upon the questionable presumption that Congress intended to provide foreign sovereigns with immunity from criminal indictment under the FSIA. We are unwilling to presume that Congress intended the FSIA to govern district court jurisdiction in criminal matters. The FSIA's grant of jurisdiction to the district courts addresses only civil actions: "The district courts shall have original jurisdiction . . . of any nonjury <u>civil</u> action against a foreign state . . . as to any claim for relief . . . with respect to which the foreign state is not entitled to immunity either under sections 1605-07 of this title or under any applicable international agreement." 28 U.S.C. § 1330(a). (emphasis added). <u>In Verlinden B.V.</u>, the Supreme Court explained that the FSIA "contains a comprehensive set of legal standards governing claims of immunity in <u>every civil action</u> against a foreign state or its political subdivisions, agencies, or instrumentalities." <u>Verlinden B.V.</u>, 461 U.S. at 488 (emphasis added). At least one circuit has relied on <u>Verlinden B.V.</u> to expressly state that the FSIA does not address foreign sovereign immunity in the criminal context. <u>United States v. Noriega</u>, 117 F.3d 1206, 1212 (11th Cir. 1997).

Because the FSIA makes no mention of foreign sovereign immunity in the criminal

context, the question of whether Defendants CBN and RN may commit "indictable" acts under RICO is much more uncertain than Defendants suggest.[4]  A court of law, however, has no business attempting to define the scope of foreign sovereign immunity in the first instance.  See In re Doe, 860 F.2d 40, 45 (2d Cir. 1988) (declining to apply the FSIA to resolve a head-of-state immunity issue).  If Congress intended defendants such as CBN and RN to be immune from criminal indictment under the FSIA, Congress should amend the FSIA to expressly so state.  The executive and legislative branches of our government are the principal players in the field of foreign relations and international comity, and consequently are much better equipped than a court of law to address the question of foreign sovereign immunity in the criminal context.[5]

---

[4]  Lest any confusion exist, we do not hold that the FSIA confers criminal jurisdiction over foreign sovereigns.  We simply conclude that because the FSIA does not address criminal sovereign immunity, Defendants' argument that they enjoy criminal sovereign immunity under the FSIA, and thus cannot commit indictable "acts" for purposes of a civil RICO claim, necessarily fails.

[5]  Defendant CBN and RN rely on Berger v. Pierce, 933 F.2d 393 (6th Cir. 1991), to suggest that they are unamenable to Plaintiffs' civil RICO claims.  In Berger, the Sixth Circuit correctly held that a federal agency was not subject to a civil RICO claim:

> Section 1962 states a requirement of "racketeering activity" as a predicate for a civil RICO action.  Section 1961(1), in turn, defines "racketeering activity," which requires that the defendant be, variously, "chargeable," "indictable," or "punishable" for violations of specific state and federal criminal provisions.  The assertion that the . . . [federal agency] was engaged in a RICO conspiracy under section 1962(d) was patently defective as a matter of law, since it is self-evident that a federal agency is not subject to state or criminal prosecution.

Id. at 397.  Accord McNeily v. United States, 6 F.3d 343, 350 (6th Cir. 1993).  Consistent with Berger, Chief Justice Marshall established long ago that "[t]he universally received

(continued...)

The broad language of the FSIA itself dictates our conclusion that the FSIA does not prohibit the district court from exercising subject-matter jurisdiction over civil RICO actions against foreign sovereigns. The FSIA's jurisdictional grant provides the district court with subject-matter jurisdiction over "<u>any nonjury civil action</u> against a foreign state . . . as to <u>any claim for relief</u>" as to which one of the FSIA's enumerated exceptions applies. 28 U.S.C. § 1330(a) (emphasis added). Moreover, the FSIA's commercial activity exception expressly states that "[a] foreign state <u>shall not be immune</u> from the jurisdiction of courts of the United States . . . <u>in any case</u> . . . in which the action is based upon a commercial activity . . . ." <u>Id.</u> at 1605(a)(2) (emphasis added).[6] Surely, Plaintiffs' civil RICO claims against Defendants CBN and RN, premised upon the

---

[5](...continued)
opinion is that no suit can be commenced or prosecuted against the United States." <u>Cohens v. Virginia</u>, 19 U.S. 264, 411-412 (1821). Since then, the Supreme Court has repeatedly endorsed the principle that the United States cannot be lawfully sued without its consent in any case, and only Congress can consent to suit against the United States. <u>See</u> Erwin Chemerinsky, <u>Federal Jurisdiction</u> § 9.2 at 544-45 (2d ed. 1994). Prior to 1952, foreign states may have enjoyed the same absolute immunity from suit as the United States and its agencies. In 1952, however, the State Department officially announced that it would suggest immunity for the public acts of foreign states but would withhold this suggestion for private acts. The Department's suggestions were dispositive in all suits prior to passage of the FSIA. <u>See</u> <u>Note</u>, <u>Ex-Head of State Immunity: A Proposed Statutory Tool of Foreign Policy</u>, 97 Yale L.J. 299, 300-01 & n.5 (1987). <u>See also</u> <u>Republic of Argentina v. Weltover</u>, 504 U.S. 607, 613 (1992) ("[A]fter the State Department endorsed the restrictive theory of foreign sovereign immunity in 1952, the lower courts consistently held that foreign sovereigns were not immune from the jurisdiction of American courts in cases arising out of purely commercial transactions.") (internal quotations omitted).

[6] Notably, RICO's language also supports our conclusion. Section 1961(1)(B) speaks to indictable "acts," not actors.

purported commercial activity of Defendants, fall within the category of "any" civil claim, action, or case.

Furthermore, because Congress viewed sovereign immunity under the FSIA as an affirmative defense to be specially pleaded or waived, rather than a jurisdictional bar to suit, Congress surely viewed commercial acts such as those in which Defendants CBN and RN allegedly engaged, as "indictable" for purposes of a civil RICO claim. The legislative history of the FSIA reveals that Congress viewed a foreign state's sovereign immunity not as a bar to suit, but as an affirmative defense which the foreign state ultimately has the burden of proving:

> [S]ince sovereign immunity is an affirmative defense which must be specially pleaded, the burden will remain on the foreign state to produce evidence in support of its claim of immunity. Thus, evidence must be produced to establish that a foreign state or one of its subdivisions, agencies or instrumentalities is the defendant in the suit and that the plaintiff's claim relates to a public act of the foreign state–that is, an act not within the exceptions in sections 1605-07.

H.R. 94-1487, at 17 (1976), reprinted in 1976 U.S.C.C.A.N. 6604, 6616. Whether the doctrine of sovereign immunity is jurisdictional or simply an affirmative defense which a foreign state may waive is unimportant to our analysis. See Verlinden B.V., 461 U.S. at 493 n.20 (notwithstanding the FSIA's legislative history, subject-matter jurisdiction under the FSIA turns on the existence of an exception in §§ 1605-1607; thus, district court must determine the availability of immunity under the FSIA regardless of foreign state's appearance). What is important for the purpose of ascertaining Congressional intent is

10

that Congress viewed sovereign immunity under the FSIA as an affirmative defense to be specially pleaded or waived.

Defendants CBN and RN essentially ask us in construing RICO and the FSIA to ascribe an intent to Congress which would effectively insulate foreign states, their agents, and instrumentalities from the scope of civil RICO. We do not believe Congress envisioned such a construction of RICO and the FSIA. Congress' purpose in enacting the FSIA was to codify the "restrictive" principle of sovereign immunity–to restrict the sovereign immunity of foreign states "to cases involving acts of a foreign state which are sovereign or governmental in nature, as opposed to acts which are either commercial in nature or those which private persons normally perform." H.R. 94-1487, at 14 (1976), reprinted in 1976 U.S.C.C.A.N. 6604, 6613. Meanwhile, in enacting RICO, Congress expressly instructed courts to liberally construe its provisions "to effectuate its remedial purpose." Pub. L. No. 91-452, § 904(a), 84 Stat. 947 (1970). RICO's "'remedial purposes' are nowhere more evident than in the provision of a private action for those injured by racketeering activity," Sedima, S.P.R.L. v. Imrex Co., Inc., 473 U.S. 479, 498 (1985), activity which often will be commercial in nature.

Accordingly, we hold that the FSIA confers subject-matter jurisdiction upon the district court over civil RICO claims against foreign states, their agencies, and instrumentalities, provided that the commercial activity exception, or another exception contained in §§ 1605-07 of the FSIA applies. We next address the applicability of the

11

FSIA's commercial activity exception to this case.

III.

The district court relied on the third clause of the FSIA's commercial activity exception to establish its subject-matter jurisdiction over Plaintiffs' action:

> (a) A foreign state shall not be immune from the jurisdiction of courts of the United Sates . . . in any case–
> . . .
> (2) in which the action is based . . . upon an act outside the territory of the United States in connection with a commercial activity of the foreign state elsewhere and that act causes a direct effect in the United States.

28 U.S.C. § 1605(a)(2). See Southway, 994 F. Supp. at 1307-08. As the district court noted, application of the commercial activity exception under the third clause of § 1605(a)(2) above, requires the following: Plaintiffs' action must (1) be based on an act outside the United States; (2) that was done "in connection with" a commercial activity; and (3) that caused a "direct effect" in the United States. Id. at 1308. Because we agree with the district court that Defendants' conduct falls within the third clause of § 1605(a)(2), we need not address the applicability of the commercial activity exception's first and second clauses. See supra, at 4.

A.

Defendants do not challenge that Plaintiffs' suit is based on acts occurring outside the United States, but which had a direct effect in the United States. Instead, Defendants CBN and RN claim that the alleged "scam to steal money" was not done "in connection with" a commercial activity as required, because illegal acts do not qualify as

12

"commercial activity" under the FSIA.  Contrary to Defendants' position, we believe that illegal acts may be done "in connection with" a commercial activity as to invoke the FSIA's commercial activity exception.

The FSIA defines "commercial activity" as "either a regular course of commercial conduct or a particular commercial transaction or act.  The commercial character of an activity shall be determined by reference to the nature of the course of conduct or particular transaction or act, rather than by reference to its purpose."  28 U.S.C. § 1603(d).  In Republic of Argentina v. Weltover, 504 U.S. 607 (1992), the Supreme Court further explained the meaning of "commercial" as used in the FSIA:

> [W]hen a foreign government acts, not as regulator of a market, but in the manner of a private player within it, the foreign sovereign's actions are "commercial" within the meaning of the FSIA. . . . [B]ecause the Act provides that the commercial character of an act is to be determined by reference to its "nature" rather than its "purpose," 28 U.S.C. § 1603(d), the question is not whether the foreign government is acting with a profit motive or instead with the aim of fulfilling uniquely sovereign objectives. Rather, the issue is whether the particular actions that the foreign state performs (whatever the motive behind them) are the type of actions by which a private party engages in "trade and traffic and commerce."

Id. at 614 (emphasis in original).

Undoubtedly, the purpose of Defendants CBN and RN's alleged scheme was to defraud Plaintiffs (and perhaps Defendants Brown and Tomicich), and steal from them. But as § 1603(d) and Weltover tell us, the purpose or motive behind Defendants' actions is irrelevant.  See Weltover, 404 U.S. at 617 ("[I]t is irrelevant why . . . [the foreign state] participated in the bond market in the manner of a private actor; it matters only that it did

13

so.") (emphasis in original).  Simply because the activities of a "foreign state" are illegal or, as the district court put it, "nefarious," Southway, 994 F. Supp. at 1309, does not mean those activities can never be commercial in nature or connected with a commercial activity.  See Cicippio v. Islamic Republic of Iran, 30 F.3d 164, 167-68 (D.C. Cir. 1994) (suggesting that the illegal character of alleged acts may be irrelevant in judging their commercial character under the FSIA).  Rather, in determining whether the alleged activity of Defendants CBN and RN was commercial, we must focus on the nature of the course of conduct among the parties, and ask whether the activity is one in which commercial actors typically engage.  See id. at 167.

Accepting the factual allegations of Plaintiffs' complaint as true, we easily conclude that Defendants' alleged conduct constituted acts done "in connection with a commercial activity" under § 1605(a)(2) of the FSIA.  Given the commercial nature of contractual relationships in the marketplace, many contracts entered into by a "foreign state" will fall within the FSIA's commercial activity exception precisely because those contracts are of a type in which private actors might enter.  This case is no exception.  Congress intended the FSIA's commercial activity exception to encompass a "broad spectrum of endeavor."  H.R. 94-1487, at 16, reprinted in 1976 U.S.C.C.A.N. 6604, 6614-15.  "Certainly, if an activity is customarily carried on for profit, its commercial nature could readily be assumed."  Id.

Here, we deal with an assignment contract–a contract for the assignment of

proceeds arising from a purported contract between NNPC and a foreign contractor for oil drilling machinery. The alleged assignment contract assigned to Defendant Brown the right to receive partial payment on the underlying contract between NNPC and the foreign contractor in exchange for Brown allowing the two parties to use his United States bank account to facilitate the transfer of over-invoiced funds. The NNPC engaged alleged representatives of Defendants CBN and RN to assist in executing the funds transfer. Defendant Brown similarly engaged Plaintiffs. In this case, nothing sovereign stands out about Defendants' behavior–the alleged assistance in the execution of an assignment contract involving the proceeds from the sale of drilling equipment. See Adler v. Republic of Nigeria, 107 F.3d 720, 725-26 (9th Cir. 1997) (holding that defendant engaged in conduct "in connection with" a commercial activity by entering into an agreement for the assignment of a service contract). Accordingly, we hold that Defendants CBN and RN's alleged conduct falls within the FSIA's commercial activity exception.

B.

Defendants next claim that the district court improperly imputed the alleged commercial activities of the NNPC to Defendants CBN and RN to establish subject-matter jurisdiction under the FSIA. As Defendants point out, Plaintiffs did not allege that Defendants were involved in making or performing the underlying NNPC contract. Nor did Plaintiffs allege that Defendants CBN and RN were personally responsible for the

15

purported assignment of the NNPC contract to Defendant Brown.  Be that as it may, we do not believe, contrary to Defendants' suggestion, that a direct contractual relationship between Defendants and Plaintiffs is necessary to sustain Plaintiffs' cause of action against Defendants under the FSIA.

A fair reading of the district court's opinion in this matter indicates that the court did not improperly impute NNPC's conduct to Defendants.  In its ruling, the district court considered matters outside the pleadings which Defendants submitted in support of their claim.  Southway, 994 F. Supp. at 1311.  In fairness to Plaintiffs, the court permitted Plaintiffs to undertake limited discovery "on the questions of agency and whether the Nigerian defendants actually participated in the alleged conduct," to show that CBN and RN officials "acted within the scope of their employment on behalf of Nigeria and CBN." Id.  What Plaintiffs' limited discovery will uncover remains uncertain at this stage, for the record on appeal provides no indication that such discovery has yet been undertaken.

At this stage, however, a fair reading of Plaintiffs' complaint suggests that Defendants CBN and RN are proper parties to this suit.  The complaint plainly states that CBN and RN officials conspired with NNPC and others to defraud Plaintiffs.  The complaint incorporates various letters evidencing communications between Defendant Brown and individuals purporting to be representatives of Defendants CBN and RN. These include (1) a letter from "Bunu Isiaka, Debt Reconciliation Officer of CBN's Office of Debt Reconciliation Committee, Foreign Operations Department in Tinubu

16

Square, Lagos, Nigeria" to Brown; (2) a letter from "Dr. M. R. Rasheed, Director, Foreign Operations Department" of CBN to Brown; and (3) a letter on government letterhead from "Major General Joe Garba" of the "Foreign Exchange Allocation Department, Office of the Presidency, Garki District Office, Abuja, Nigeria" to Brown. On its face, the complaint is quite sufficient to withstand Defendants' argument that Plaintiffs improperly named them as parties to their suit.

C.

Finally, Defendants CBN and RN claim that the FSIA's tort exception and applicable restrictions, contained in 28 U.S.C. § 1605(a)(5) & (a)(5)(B), respectively, provide them with immunity from Plaintiffs' civil RICO claims. That section provides in relevant part:

> (a) A foreign state shall not be immune from the jurisdiction of courts of the United States . . . in any case–
> . . .
> (5) not otherwise encompassed in paragraph (2) above [i.e., the commercial activity exception], in which money damages are sought against a foreign state for . . . damage to or loss of property, occurring in the United States and cause by the tortious act or omission of that foreign state or of any official or employee of that foreign state while acting within the scope of his office or employment; except this paragraph shall not apply to–
> . . .
> (B) any claim arising out of . . . misrepresentation, deceit, or interference with contract rights.

Id. (emphasis added). Defendants argue that because the alleged scheme to defraud Plaintiffs involved misrepresentation and deceit, § 1605(a)(5)(B) restores their sovereign immunity from suit. In other words, Defendants CBN and RN suggest that subsection

17

(a)(5)(B) limits the commercial activity exception in § 1605(a)(2), as well as the tort exception in § 1605(a)(5). Defendants' argument is meritless.

The plain language of § 1605(a)(5) indicates that the tort exception applies to tort actions for money damages "not otherwise encompassed" by § 1605(a)(2)'s exception relating to commercial activity. Even assuming Plaintiffs' claims against Defendants sound in tort rather than contract, those claims nonetheless are based upon alleged commercial activity, and thus encompassed by § 1605(a)(2). See Export Group v. Reef Industries, Inc., 54 F.3d 1466, 1477 (9th Cir. 1995) (holding that § 1605(a)(5)(B)'s restrictions on the FSIA's "non-commercial torts" exception do not restore sovereign immunity for FSIA claims based on a foreign state's "commercial activities").

The legislative history of the FSIA's tort exception confirms our understanding of this provision. In enacting § 1605(a)(5), Congress intended to address the problem of "noncommercial torts," namely traffic accidents: "The purpose of section 1605(a)(5) is to permit the victim of a traffic accident or other noncommercial torts to maintain an action against a foreign state to the extent otherwise provided by law." H.R. 94-1487, at 21 (1976), reprinted in 1976 U.S.C.C.A.N. 6604, 6620 (emphasis added). Thus, where § 1605(a)(2)'s commercial activity exception applies, as in this case, § 1605(a)(5)(B)'s restriction on subsection (a)(5)'s tort exception for torts arising out of misrepresentation and deceit simply has no application. This is so because subsection (a)(5)(B) of § 1605

18

by its express language applies only to subsection (a)(5).

AFFIRMED and REMANDED.