**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**JUL 22 2004**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

LORI J. TUCKER,

      Plaintiff - Appellant,

      v.

COLORADO DEPARTMENT OF
PUBLIC HEALTH AND
ENVIRONMENT,

      Defendant - Appellee.

No. 03-1195
(D. Ct. Nos. 01-N-1787(OES) &
02-N-1917 (OES))
(D. Colo.)

---

**ORDER AND JUDGMENT**[*]

---

Before **TACHA**, Chief Circuit Judge, **McWILLIAMS** and **LUCERO**, Circuit
Judges.

Plaintiff-Appellant Lori J. Tucker filed two suits, consolidated in the

District Court, against her former employer, Defendant-Appellee Colorado

Department of Public Health and Environment ("the Department"), alleging two

retaliation claims in violation of Title VII of the Civil Rights Act of 1964. *See* 42

U.S.C. § 2000e *et seq*. The District Court granted summary judgment in favor of

---

[*]This order and judgment is not binding precedent, except under the
doctrines of law of the case, res judicata, and collateral estoppel. This court
generally disfavors the citation of orders and judgments; nevertheless, an order
and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

the Department, reasoning that Ms. Tucker failed to present any evidence that she engaged in a protected activity, and a motion to dismiss, reasoning that Ms. Tucker failed to exhaust her administrative remedies. We exercise jurisdiction pursuant to 28 U.S.C. § 1291 and AFFIRM.

## I. BACKGROUND

The record on appeal is far from clear. Our best attempt at deciphering this confusing scenario follows. In August 1988, Ms. Tucker began working for the Department as a word processor. Following a number of promotions, on August 1, 1998, Ms. Tucker assumed the position of Environmental Protection Specialist III ("EPS III"), where she independently oversaw the Department's biosolids program. On August 31, 1998, Ms. Tucker received her first paycheck following her promotion to EPS III, which she believed did not fully reflect the salary to which she was due. Believing that the Department withheld her full raise because of her race and sex, Ms. Tucker filed an internal grievance. After investigating her claims, the Department determined that the evidence did not support Ms. Tucker's contention.

On February 16, 1999, Ms. Tucker filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") alleging that, after she filed the internal grievance, she was "denied equal wages and subjected to different terms and conditions of employment in retaliation for filing" the

grievance. On May 11, 2001, she requested a right-to-sue letter on this claim, which the EEOC issued on June 11, 2001. This "wage claim" constitutes Ms. Tucker's first cause of action against the Department.

As early as the fall of 2000, the Department began questioning Ms. Tucker's performance in the EPS III position. The Department first issued a "corrective action" to Ms. Tucker on October 30, 2000, for handling a work assignment in an "unprofessional, disrespectful manner." Beginning in March 2001, the Department began an extensive review of Ms. Tucker's work. As a result, it concluded that she had fabricated or mismanaged significant portions of her work. Specifically, it determined that she had falsely claimed to have inspected several sites and that she had not maintained, or had entirely fabricated, records regarding her inspections of other sites. The Department then issued a second corrective action in May 2001, citing additional examples of what her supervisors believed to be unprofessional and uncooperative behavior. On May 7, 2001, the Department placed Ms. Tucker on administrative leave.

On June 8, 2001, Division Director J. David Holm met with Ms. Tucker and her attorney to discuss the issues raised in the investigation. At this meeting, Mr. Holm questioned Ms. Tucker extensively regarding the allegations. From what he perceived to be evasive and confusing answers, he concluded that there were significant problems with her work. As a result, the Department fired Ms. Tucker

effective June 29, 2001. This action constitutes the basis for Ms. Tucker's "retaliatory discharge claim" against the Department.

Ms. Tucker appealed her termination to the State Personnel Board. As part of that appeal, Ms. Tucker filed a discrimination charge with the Colorado Civil Rights Department ("CCRD") on August 8, 2001, asking the CCRD to investigate her then-pending claims before the State Personnel Board. On September 5, 2001, however, she withdrew her CCRD charge.

On May 16, 2002, Ms. Tucker requested a right-to-sue letter from the EEOC regarding her retaliatory-discharge claim. The EEOC referred this request to the Department of Justice, which issued a right-to-sue letter on July 18, 2002. Thereafter, Ms. Tucker filed a complaint in federal court.

The Department moved for summary judgment on the wage claim, contending that Ms. Tucker could not make out a prima facie case under Title VII. Asserting that she had failed to exhaust her administrative remedies, it also moved to dismiss her retaliatory-discharge claim for lack of jurisdiction. The District Court granted both motions, and this appeal followed.

## II. DISCUSSION

A.    The Wage Claim

1.    *Standard of Review*

"We review the grant of a motion for summary judgment de novo. " *Mincin*

*v. Vail Holdings, Inc.*, 308 F.3d 1105, 1108 (10th Cir. 2002). "Summary judgment is proper only if the evidence, reviewed in the light most favorable to the party opposing the motion, demonstrates that there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law." *Save Palisade FruitLand v. Todd*, 279 F.3d 1204, 1209 (10th Cir. 2002). In opposing a motion for summary judgment, "[t]he nonmoving party may not . . . rely solely on its pleadings but must set forth specific facts showing that there is a genuine issue for trial with regard to those dispositive matters for which it carries the burden of proof." *Mincin*, 308 F.3d at 1108.

2.    *Merits*

On her wage claim, Ms. Tucker argues that the Department discriminated against her in late August 1998 by refusing to give her the full promotional wage increase that she believes was due. The District Court rejected this claim, holding that, because Ms. Tucker had not referenced any evidence in the record to show that she engaged in protected conduct before the alleged discrimination took place, she failed to establish a prima facie case under Title VII.

On appeal, Ms. Tucker contends that the District Court erred in concluding that she failed to provide such evidence. In support of this contention, she provides (for the first time on appeal) extensive citation to the record to show that she engaged in protected activity before the Department allegedly denied her the

proper wage increase.

Her effort is too late. Even if this long list of citations establishes a genuine issue of material fact as to whether Ms. Tucker engaged in protected activity prior to the alleged discrimination, her attorney did not provide these citations to the District Court. We refuse to allow him to play catch-up on appeal.

Although we find support for this conclusion in many sources, one in particular stands out: Rule 83(b) of the Federal Rules of Civil Procedure. It provides:

> A judge may regulate practice in any manner consistent with federal law, rules adopted under 28 U.S.C. §§ 2072 and 2075, and local rules of the district. No sanction or other disadvantage may be imposed for noncompliance with any requirement not in federal law, federal rules, or the local district rules unless the alleged violator has been furnished in the particular case with actual notice of the requirement. Fed. R. Civ. P. 83(b).

Pursuant to this rule, a district judge may establish personal "standing orders" regulating practice before his court (and subsequently punish parties for violating those rules), so long as (1) those procedures are consistent with federal law and the Rules of Civil Procedure; and (2) the violating party had "actual notice" of the rule. *See generally* Myron J. Bromberg & Jonathan M. Korn, *Individual Judges' Practices: An Inadvertent Subversion of the Federal Rules of Civil Procedure*, 68 ST. JOHN'S L. REV. 1 (1994).

Both requirements are satisfied here. First, in his "Practice

Standards—Civil," District Judge Edward W. Nottingham provides that a party opposing summary judgment must specifically reference record material supporting her opposition. *See* D. Colo. R., Judicial Officers' Procedures, Judge Nottingham's Practice Standards—Civil, at p. 11, *available at* http://www.co.uscourts.gov/judges/ewn_trial_civ.pdf (last visited July 14, 2004). This requirement does not conflict with federal law or any of the Rules of Civil Procedure. Second, in a September 18, 2001, "General Case Management Order," Judge Nottingham admonished counsel in this case to adhere strictly to these rules, calling special attention to the summary judgment requirements. The September 18 order also notified counsel that they could receive copies of the summary judgment rules from the clerk's office and from the court's website. *See* Fed. R. Civ. P. 83 cmt. to 1995 amendments (noting that a party has sufficient notice of a judge's rules if the judge enters an "order in a case specifically adopting by reference a judge's standing order and indicating how copies can be obtained"). Hence, under his standing rules, Judge Nottingham could properly refuse to consider any unsupported allegation. Therefore, the District Court did not err in concluding that Ms. Tucker failed to establish that she engaged in protected activity before her August 1998 wage dispute.

B.    The Retaliatory Discharge Claim

1.    *Standard of Review*

"Exhaustion of administrative remedies is a 'jurisdictional prerequisite' to suit under Title VII." *Jones v. Runyon*, 91 F.3d 1398, 1399 (10th Cir. 1996). The burden of establishing jurisdiction rests squarely on the shoulders of the party claiming it. *Southway v. Central Bank of Nigeria*, 328 F.3d 1267, 1274 (10th Cir. 2003). We review de novo a district court's legal conclusions regarding dismissal for lack of subject matter jurisdiction pursuant to Rule 12(b)(1), and we review for clear error any findings of jurisdictional facts that underlie that ruling. *Maestas v. Lujan*, 351 F.3d 1001, 1013 (10th Cir. 2003).

2. *Merits*

We next consider whether Ms. Tucker exhausted her administrative remedies with respect to her retaliatory-discharge claim. Her primary argument is that, because she exhausted her administrative remedies with respect to her August 1999 wage claim, she did not need to exhaust with respect to her 2001 discharge claim because it was "like and related to" her earlier claim. She cites to several pre-2002 cases to support this contention. She also claims that, in any event, she properly exhausted her administrative remedies by presenting the matter to the State Personnel Board.

In response, the Department seems to concede that a plaintiff need not exhaust her administrative remedies as to claims that are "like and related" to an earlier claim. It claims, however, that a plaintiff cannot take advantage of this

rule unless the later discrimination occurs while the first claim is still pending before the EEOC. The Department cites *Ingels v. Thiokol Corp.*, 42 F.3d 616 (10th Cir. 1994), and *Mosely v. Pena*, 100 F.3d 1515 (10th Cir. 1996), to support this theory. As to her second theory, the Department claims that Ms. Tucker could only exhaust her administrative remedies with the CCRD, not the State Personnel Board, and that because she withdrew her CCRD charges shortly after filing them, she never exhausted as to her retaliatory-discharge claim.

> a.   *Exhaustion of "Like and Related" Claims*

Prior to 2002, Tenth Circuit law allowed a party to include in a civil claim those acts that were "like or reasonably related to the allegation of the EEOC charge, *including new acts occurring during the pendency of the charge before the EEOC." Ingels,* 42 F.3d at 625 (emphasis added). Whatever the exact scope of that rule was, it is no longer the law. *See National R.R. Passenger Corp. v. Morgan*, 536 U.S. 101 (2002) (holding, under Title VII, that an employee seeking to recover for discrete acts of alleged discrimination, with respect to which he first filed a discrimination charge with the appropriate state agency, may only recover for those acts occurring within 300 days of the date that the employee filed his charge with the EEOC).

In *Martinez v. Potter*, 347 F.3d 1208, 1210 (10th Cir. 2003), we held that we lacked jurisdiction over a postal employee's allegations of discrimination

because he failed to exhaust his administrative remedies as to each discrete incident of discrimination.  In *Martinez*, the plaintiff filed an EEOC complaint for alleged discriminatory acts occurring in 1999.  When he filed his civil case, however, he included alleged acts of discrimination that occurred following the EEOC filing, including a September 2000 reprimand and his April 2000 termination.  As did the District Court here, the district court in *Martinez* relied on *Ingels* to dismiss the postal worker's claims as unexhausted.

On appeal, the postal employee argued that he did not need to exhaust the later claims because they were "like or reasonably related" to the earlier claims made in his EEOC filing.  Pointing to the Supreme Court's decision in *Morgan*, 536 U.S. 101 (2002), we disagreed, holding that "each discrete incident of [discrimination] constitutes its own 'unlawful employment practice' for which administrative remedies must be exhausted."  *Martinez*, 347 F.3d at 1210.  We reasoned that this rule supports the policies of Title VII in that it "put[s] an employer on notice of a violation prior to the commencement of judicial proceedings . . . . [and it] facilitate[s] internal resolution of the issue rather than promoting costly and time-consuming litigation."  [1] *Id*. at 1211.

---

[1]  The Supreme Court has specifically noted that this rule does not apply to claims of hostile environment because, by definition, such claims are based on a string of incidents rather than separate acts.  *See Davidson v. America Online, Inc.,* 337 F.3d 1179, 1185 (10th Cir. 2003) (discussing *Morgan*).  Ms. Tucker

(continued...)

Although the District Court did not rely on *Martinez* in rendering its decision, we may affirm on any grounds supported by the record. *United States v. Lang*, 364 F.3d 1210, 1222 (10th Cir. 2004). As such, under *Martinez*, Ms. Tucker's "like and related" claim must fail. It is clear that Ms. Tucker's 1999 pay dispute and her 2001 discharge claim are "discrete incidents" of employment discrimination. Thus, she must fully exhaust her administrative remedies as to each claim.

   b. *CCRD*

We next address whether, in the absence of her "like and related" argument, Ms. Tucker carried her burden to show that she exhausted her administrative remedies for the retaliatory-discharge claim. We hold that she has not.

Section 706(c) of Title VII provides that, in cases alleging discrimination involving a state, a claimant may not file a charge of discrimination with the EEOC unless she has first filed a claim with an appropriate state agency and given that agency at least sixty days to attempt to resolve the matter (unless the state agency dismisses the claim earlier). *See* 42 U.S.C. § 2000e-5(c); *see also EEOC v. Commercial Office Prod. Co.*, 486 U.S. 107, 110-11 (1988). The plaintiff can only satisfy this sixty-day waiting period by filing with a state

---

[1](...continued)
does not make a hostile environment claim.

agency designated by the EEOC as a deferral agency. *See* 2 Arthur Larson & Lex K. Larson, *Employment Discrimination* § 48.12(a)(1), at 9A-23 (1992). Further, if the plaintiff dismisses her complaint pending before the state deferral agency prior to the expiration of the sixty-day waiting period, she has failed to exhaust the requirements of § 706(c). *See Zugay v. Progressive Care, S.C.*, 180 F.3d 901, 903 (7th Cir. 1999); *cf. also Khadir v. Aspin*, 1 F.3d 968, 971 (10th Cir. 1993) (holding that, in a Title VII case involving a federal employer, a complainant has not exhausted her administrative remedies if she "abandons . . . her claim before the agency has reached a determination").

Colorado has two § 706 deferral agencies. First, the EEOC has certified the CCRD as an appropriate deferral agency for all discrimination claims. *See* 29 C.F.R. § 1601.74. Second, the State Personnel Board is an appropriate deferral agency as to all claims except those arising under § 704(a) of Title VII (retaliatory-discharge claims). *Id.* n.4. As to such claims, the State Personnel Board acts only as a "Notice Agency." *Id.*

In applying this body of law, we glean the following. First, Ms. Tucker could not satisfy the sixty-day waiting period by pursuing her case before the State Personnel Board because it is merely a "Notice Agency" as to § 704(a) claims. Second, Ms. Tucker did not satisfy the sixty-day waiting period with the CCRD—the only available deferral agency for her § 704(a) claim—because she

dismissed her claim before the CCRD less than one month after filing. As such, the District Court correctly concluded that Ms. Tucker failed to exhaust her administrative remedies.

### III. CONCLUSION

For the foregoing reasons, we AFFIRM the judgment of the District Court.

ENTERED FOR THE COURT,


Deanell Reece Tacha
Chief Circuit Judge