Henry T. SOUTHWAY, Southway Construction Company, Inc., Douglas Houghton, Randy Thurston, J.E. Losavio, Jr., and Russ Gray, doing business as Gray Real Estate, Plaintiffs,

v.

CENTRAL BANK OF NIGERIA, Republic of Nigeria, the Law Firm of Kirk P. Brown, P.C., Kirk Patterson Brown, Helen Tomicich, also known as Helen Tomicich Brown, [Both Browns] individually and doing business as the Communications Connection, Defendants.

No. CIV.A.96–B–2540.

United States District Court, D. Colorado.

July 5, 2001.

Joseph E. Losavio, Jr., William Judson Culver, J.E. Losavio, Jr. Law Office, Pueb-

lo, CO, Karrick A. Burrows, Karrick A. Burrows, Law Office, Pueblo, CO, for plaintiffs.

Gregory William Smith, Hamilton & Faatz, Denver, CO, Steven David Plissey, Michael A. Williams, Williams, Youle & Koenigs, Denver, CO, David H. Fromm, Brown, Gavalas & Fromm, LLP, New York City, for Central Bank of Nigeria and Republic of Nigeria.

Kirk Patterson Brown, Pueblo, CO, pro se.

## MEMORANDUM OPINION AND ORDER

BABCOCK, Chief Judge.

Plaintiffs Henry T. Southway, Southway Construction Company, Inc., Douglas Houghton, Randy Thurston, J.E. Losavio, Jr., and Russ Gray, doing business as Gray Real Estate, bring claims against the Central Bank of Nigeria (CBN), Republic of Nigeria, (collectively the "Nigerian Defendants"), The Law Firm of Kirk P. Brown, P.C., Kirk Patterson Brown, Helen Tomicich, also known as Helen Tomicich Brown, individually and doing business as The Communications Connection. Plaintiffs commenced this civil action on November 1, 1996, alleging violations of the Racketeer Influenced and Corrupt Organizations Act of 1970, 18 U.S.C. §§ 1961–1968 (1994). The Nigerian Defendants move for summary judgment. The motion is adequately briefed and oral argument will not materially aid its resolution. For the reasons set forth below, I grant the Nigerian Defendants' motion for summary judgment.

### I. Facts and Procedural History

The following facts are undisputed and are largely set out in *Southway v. Central Bank of Nigeria*, 198 F.3d 1210 (10th Cir. 1999) and *Southway v. Central Bank of Nigeria*, 994 F.Supp. 1299 (D.Colo.1998). Plaintiffs are residents of southern Colorado. Defendants Kirk Patterson Brown (Mr. Brown) and Helen Tomicich Brown (Mrs. Brown) are also residents of southern Colorado. Mr. Brown is an attorney licensed to practice law in the State of Colorado and operates a law firm in Pueblo, Colorado.

In November 1995, Mr. Brown was contacted in Pueblo by a Nigerian. The person claimed to be a representative of Garuba & Associates or Garuba & Sons ("Garuba"), a construction contracting firm. Garuba's representative claimed the company had been hired to perform work for the Nigerian National Petroleum Corporation (NNPC). The NNPC owed Garuba approximately $21,000,000, and wanted an offshore account in which to deposit the money and an escrow agent to settle all claims with subcontractors and suppliers prior to disbursing remaining funds to Garuba. It was stated that Mr. Brown would receive a percentage of the funds if he claimed to be a subsidiary of the original foreign firm and allowed use of his bank account.

Mr. Brown agreed that his company, The Communication Connection, would serve as escrow agent for Garuba in return for 1% of the contract proceeds, or $210,000. He asked Garuba to assign the contract to The Communication Connection, and believed that the assignment had been filed with the Nigerian government, although he never saw a copy of the assignment. He also hired a purported attorney, Mr. Eguaibor, to verify the legitimacy of all transactions.

Shortly thereafter, on November 30, 1995, Mr. Brown sent a letter, via facsimile transmission, to "Dr. T.S. Adedipe, Office of the Director General, Contract Review Panel, Federal Secretariat Complex" in Ikoyi–Lagos, Nigeria. The letter appears on letterhead from "The Communication Connection, Inc.," located at 196 Alhambra, Pueblo, Colorado. Mr. Brown signed

the letter as "Kirk P. Brown, Corporate Secretary." The letter requests "settlement" of a bill past due in the amount of $21,320,000.00. The letter references "Contract No. NNPC/PED/2039–X92," regarding "Supply of Heavy Duty Crude Oil Passage Drilling Machines and Calibrators for Port–Harcourt, Warri, and Kaduna Refineries." It requests immediate wire transfer of such funds to Mr. Brown's bank account in Pueblo.

This letter, together with six other letters attached to and incorporated within the Complaint, evidence communications between Mr. Brown and people purporting to be representatives of the Republic of Nigeria, NNPC, and CBN. All communications reference "Contract No. NNPC/PED/2039–X92" and appear on official-looking letterhead, bearing various stamps and signatures. Over time, the letters began to demand payment of various fees prior to disbursement of the $21,000,000. Because Garuba expressed difficulty raising the necessary funds, Mr. Brown offered to raise the funds and pay the fees in return for a commission of $2,100,000. Garuba agreed.

The first of the six communications is a letter from "Bunu Isiaka, Debt Reconciliation Officer of CBN's Office of Debt Reconciliation Committee, Foreign Operations Department in Tinubu Square, Lagos, Nigeria" to Mr. Brown, "The Managing Director, Communications Connections, Inc.," dated February 3, 1996 (Isiaka Letter). The Isiaka Letter directs Mr. Brown to pay a 1% stamp duty fee of $213,200.00, via wire transfer, to the account of "M.M.B. LTD." at "Citibank N.A." in New York. The Isiaka Letter identifies the beneficiary of such account as "A. Dan–Azumi."

The second is a letter from "Dr. B.O. Eguaibor, Principal Partner, Eguaibor & Eguaibor, Solicitors and Advocates, Ikeja, Lagos State" to Mr. Brown dated February 7, 1996 (First Eguaibor Letter). The Eguaibor Letter acknowledges receipt of $2,000.00 from Mr. Brown as payment for legal representation regarding receipt of the contract funds. The Eguaibor Letter instructs Mr. Brown to transfer an additional $21,320.00 for payment of a "Bond Fee."

The third is another letter from "Dr. B.O. Eguaibor, Principal Partner, Eguaibor & Eguaibor, Solicitors and Advocates, Ikeja, Lagos State" to Mr. Brown dated February 21, 1996 (Second Eguaibor Letter). The Second Eguaibor Letter states that Dr. Eguaibor has signed the necessary papers to release the over-invoiced funds to Mr. Brown and instructs Mr. Brown to remit $100,000.00 to Eguaibor & Eguaibor after receipt of the over-invoiced funds.

The next is a letter from "Dr. M.R. Rasheed, Director, Foreign Operations Department" of CBN to Mr. Brown, "The Managing Director, Communications Connections, Inc.," dated March 19, 1996 (First Rasheed Letter). The First Rasheed Letter acknowledges receipt, via wire transfer, of $32,000.00 from Mr. Brown for "Handling/Cable/Signing Fees."

The fifth communication is a letter from "Dr. M.R. Rasheed, Director, Foreign Operations Department" of CBN to "Alberta L. Vega" of the Pueblo District Office of "The Honourable Senator Ben Nighthorse Campbell, United States of America Senate" dated March 25, 1996 (Second Rasheed Letter). The Second Rasheed Letter states that Communications Connections, Inc. will receive payment of $21,320,000.00 less "Refund Tax" as soon as Communications Connections, Inc. satisfies its "obligation in regard to the stamp duty payment of $213,200.00."

The last is a letter from "Major General Joe Garba" of the "Foreign Exchange Allocation Department, Office of the Presi-

dency, Garki District Office, Abuja, Nigeria" to Mr. Brown of "Communications Connections, Inc. c/o Law Firm of Kirk P. Brown" dated April 12, 1996 (Garba Letter). The Garba Letter, which appears on official-looking government letterhead bearing various stamps and signatures, directs Mr. Brown to pay $319,800.00 to the account of "Gulf Bank Auto Account" at "Bankers Trust" in New York. The Garba letter identifies the beneficiary of such account as "Alvan Pharood."

In March 1996, Mr. and Mrs. Brown, purportedly short the funds necessary to take full advantage of this opportunity, contacted Plaintiffs Randy Thurston (Thurston) and J.E. Losavio, Jr. (Losavio) (himself a lawyer and former Colorado State district attorney) regarding an investment opportunity. Mr. and Mrs. Brown offered Thurston and Losavio the opportunity to invest in a contract between The Communications Connection, Inc. and Nigeria. Mr. and Mrs. Brown encouraged Thurston and Losavio to invest $213,200.00 to pay for "stamp duties" and enable the transfer of $21,300,000.00 to the trust account of the Law Firm of Kirk. P. Brown, P.C. Mr. and Mrs. Brown represented that The Communications Connection, Inc. and Mr. Brown would receive a commission of $2,100,000.00 from CBN. They offered to "split" the commission with Thurston and Losavio, entitling Thurston and Losavio to $1,065,00.00 in return for their $213,200.00 investment. Thurston and Losavio accepted. On March 27, 1996, Mr. and Mrs. Brown, Thurston, and Losavio entered into a "Reimbursement Agreement" and "Indemnity Agreement" memorializing the transaction.

In April 1996, Mr. Brown contacted plaintiff Russ Gray (Gray) regarding the Nigeria transaction. Mr. Brown represented to Gray that he was a party to a financial transaction with Nigeria involving millions of dollars. Mr. Brown advised that the transaction would close in thirty days, but Mr. Brown had insufficient funds to fulfill his financial obligation. Gray, doing business as Gray Real Estate, paid Mr. Brown $50,000.00.

Also in April 1996, Mr. Brown contacted plaintiff Henry T. Southway (Southway). Mr. Brown represented to Southway that CBN would transfer millions of dollars to Mr. Brown's trust account, but that Mr. Brown needed to pay certain fees to exchange Nigerian currency for United States dollars. In consideration for Southway's payment of $160,000.00, Mr. Brown offered to pay Southway $800,000.00 "upon receipt of the contract funds into his law firm trust account from the Central Bank of Nigeria and the government of Nigeria." Southway accepted Mr. Brown's offer. On April 15, 1996, Mr. Brown and Southway entered into a written agreement memorializing the transaction.

On approximately the same date in April 1996, Mr. and Mrs. Brown contacted plaintiff Douglas Houghton (Houghton). Mr. and Mrs. Brown represented to Houghton that they "brokered a contract on the sale of oil field equipment" to NNPC. Mr. and Mrs. Brown told Houghton that the contract was complete and ready for disbursement, but that they needed to raise 1.5% of the total contract amount to pay for "exchange rate levies." They offered to pay Houghton $550,000.00 in consideration for Houghton's loan of $110,000.00. Mr. and Mrs. Brown also offered to "personally indemnify" Houghton for his investment "if something goes wrong." Houghton also accepted their offer. On April 16, 1996, Mr. and Mrs. Brown and Houghton entered into an "Indemnity Agreement" memorializing the transaction.

On September 1, 1996, Mr. and Mrs. Brown traveled to Vienna, Austria, to collect the contract money. Mr. Brown was told by Mr. Ogwuma at CBN that the

payment would be made through the Viennese banks. Upon arrival, Mr. Brown met with three unknown Nigerians who presented official-looking CBN business cards. The Nigerians showed Mr. and Mrs. Brown a suitcase full of cash with white-powder residue on it. The powder was allegedly to hide the cash from Austrian customs. The Nigerians told the Browns that the money would be funneled through the Austrian banks after the powder had been washed off. The Browns paid the three $10,000 in cash as a fee for handling the transaction in Vienna, and received a receipt in return. The Browns had a disagreement with the three Nigerians over who should pay for the "cleaning" of the Nigerian cash. They returned to the United States sans payment on the advice of Mr. Ogwuma, who said he would take care of matters.

The expected wire transfer of $21,300,000.00 never arrived in Mr. Brown's trust account, precluding Mr. and Mrs. Brown from satisfying their obligations to Plaintiffs. The investors here together lost over one-half million dollars. Plaintiffs filed suit on November 1, 1996. Plaintiffs allege violation of the Racketeer Influenced and Corrupt Organizations Act of 1970 (RICO), 18 U.S.C. §§ 1961–1968 (1994). The predicate acts on which Plaintiffs base their civil RICO claim are violations of Colorado and federal law: (1) theft in violation of Colo.Rev.Stat. § 18–4–401; (2) securities fraud in violation of 15 U.S.C. §§ 77b(1), 77e, 77q, and 77x; (3) mail fraud in violation of 18 U.S.C. § 1341; (4) wire fraud in violation of 18 U.S.C. § 1343; (5) transfer of stolen property in violation of 18 U.S.C. §§ 2314 and 2315; and (6) violations of unspecified international law. Plaintiffs allege that the stolen money ultimately went to a criminal association of Nigerians and Americans composed of Major General Joe Garba, Office of the Presidency, Republic of Nigeria; Dr. Paul Ogwuma, Governor, Central Bank of Nigeria;

Dr. M.R. Rasheed, Director, International Remittance Department, Central Bank of Nigeria; Bunu Isiaka, Debt Reconciliation Officer, Central Bank of Nigeria; A. Dan–Azumi; Dr. T.S. Adedipe; Dr. B.O. Eguaibor; Kirk Brown; Helen Tomicich Brown; the Central Bank of Nigeria; the Law Firm of Kirk P. Brown; and The Communication Connection, Inc.

The Nigerian Defendants argue that Plaintiffs and the Browns fell victim to a scam known to the Nigerian police as a "419" because it is a violation of the Criminal Code Act of Nigeria, Chapter 77, §§ 419 (1990). These schemes, also known as "Advanced Fee Frauds," have been the subject of world-wide publicity, as well as warnings issued by the United States and the Central Bank of Nigeria. *See Adler v. Federal Republic of Nigeria*, 219 F.3d 869 (9th Cir.2000); *Intercontinental Res., N.A. v. Federal Republic of Nigeria*, 1999 WL 219909, *1–*2 (S.D.N.Y. Apr.15, 1999). The typical 419 scam begins when:

> [a]n unsolicited letter is initially sent from an individual purporting to be or have connections with officials in the Nigerian government. The letters usually claim that the author has access to millions of dollars on deposit at the CBN, and that those funds cannot be paid in Nigeria, but can only be transferred to a foreign company outside Nigeria. As a result, the letter requests that the recipients allow the money to be wired to their bank accounts in exchange for the recipient's receiving a large portion of the funds. Shortly after responding to the letters, the recipients are informed that they must pay some type of fee before the funds can be released, in satisfaction of which payment must be made to private bank accounts in or outside of Nigeria. No funds are ever transferred from CBN to the recipients.

*Id.* at *2. The Nigerian Defendants assert that no representative of CBN or the government was involved with Plaintiffs, and all letters and faxes received by the Browns were forgeries.

This action was filed on November 1, 1996. The Nigerian Defendants moved to dismiss on various grounds, including lack of subject matter jurisdiction. I denied that motion on February 26, 1998. *See Southway v. Central Bank of Nigeria,* 994 F.Supp. 1299 (D.Colo.1998). The Nigerian Defendants took an interlocutory appeal to the Tenth Circuit. On February 19, 1999 I granted a motion to vacate and reset the trial date, subject to the Tenth Circuit's mandate. As of February 22, 1999, the case was stayed. On December 9, 1999, the Tenth Circuit filed judgment affirming my Order finding jurisdiction. *See Southway v. Central Bank of Nigeria,* 198 F.3d 1210 (10th Cir.1999). The Tenth Circuit remanded the case back to this court for further proceedings.

Meanwhile, on May 19, 1999 default judgment was entered against The Law Firm of Kirk P. Brown, P.C. On May 28, 1999 Mr. and Mrs. Brown filed a counterclaim against all Plaintiffs for defamation. On April 21, 2000 Defendant The Communication Connection filed a third-party Complaint against the Central Bank of Nigeria and the Republic of Nigeria for breach of contract, misrepresentation, and RICO violations.

## II. Motion for Summary Judgement

The purpose of a summary judgment motion is to assess whether trial is necessary. *See White v. York Int'l Corp.,* 45 F.3d 357, 360 (10th Cir.1995). Rule 56(c) provides that summary judgment shall be granted if the pleadings, depositions, answers to interrogatories, admissions, or affidavits show that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. The non-moving party has the burden of showing that issues of undetermined material fact exist. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). A party seeking summary judgment bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of the pleadings, depositions, interrogatories, and admissions on file together with affidavits, if any, that it believes demonstrate the absence of genuine issues for trial. *See Celotex,* 477 U.S. at 323, 106 S.Ct. 2548; *Mares v. ConAgra Poultry Co., Inc.,* 971 F.2d 492, 494 (10th Cir.1992). Once a properly supported summary judgment motion is made, the opposing party may not rest on the allegations contained in the complaint, but must respond with specific facts showing the existence of a genuine factual issue to be tried. Rule 56(e); *see also Otteson v. United States,* 622 F.2d 516, 519 (10th Cir.1980). These facts may be shown "by any of the kinds of evidentiary materials listed in Rule 56(c), except the mere pleadings themselves." *Celotex,* 477 U.S. at 324, 106 S.Ct. 2548.

Summary judgment is also appropriate when the court concludes that no reasonable juror could find for the non-moving party based on the evidence presented in the motion and response. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). The operative inquiry is whether, based on all documents submitted, reasonable jurors could find by a preponderance of the evidence that the plaintiff is entitled to a verdict. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Summary judgment should not enter if, viewing the evidence in a light most favorable to the non-moving party and drawing all reasonable inferences in that party's favor, a reasonable jury could return a verdict for that party. *See Anderson,* 477 U.S. at 252, 106 S.Ct. 2505; *Mares,* 971

F.2d at 494. Unsupported allegations without "any significant probative evidence tending to support the complaint" are insufficient, *White*, 45 F.3d at 360 (citations omitted), as are conclusory assertions that factual disputes exist. *See Anderson*, 477 U.S. at 247–48, 106 S.Ct. 2505. Evidence presented must be based on more than "mere speculation, conjecture, or surmise" to defeat a motion for summary judgment. *Rice v. United States*, 166 F.3d 1088, 1092 (10th Cir.1999); *U.S. ex rel. Hafter D.O. v. Spectrum Emergency Care, Inc.*, 190 F.3d 1156, 1163 (10th Cir.1999). Nevertheless, summary judgment is inappropriate if disputes remain as to material facts. *See James Barlow Family Ltd. P'ship v. David M. Munson, Inc.*, 132 F.3d 1316, 1319 (10th Cir.1997).

The Nigerian Defendants move for summary judgment, arguing that this court lacks subject matter jurisdiction as they are immune from suit under the Foreign Sovereign Immunities Act ("FSIA"). The Foreign Sovereign Immunities Act of 1976 (FSIA), as amended, 28 U.S.C. §§ 1330, 1441(d), and 1602–1608 (1994 & Supp.1997), provides the exclusive means by which the courts of this country may obtain jurisdiction over a foreign state, its agency, or instrumentality. *See Argentine Republic v. Amerada Hess Shipping Corp.*, 488 U.S. 428, 443, 109 S.Ct. 683, 102 L.Ed.2d 818 (1989). Foreign states and their agencies or instrumentalities are presumptively immune from suit in the courts of the United States. Section 1604 of the FSIA states, "Subject to existing international agreements to which the United States is a party at the time of enactment of this Act a foreign state *shall be immune* from the jurisdiction of the courts of the United States and of the States except as provided in sections 1605 to 1607 of this chapter." 28 U.S.C. § 1604 (emphasis added). Failure to satisfy the statute's exceptions deprives the district court of subject matter jurisdiction. *See Walter*

*Fuller Aircraft Sales, Inc. v. Republic of Philippines*, 965 F.2d 1375, 1383 (5th Cir. 1992) (citations omitted).

"Courts typically employ the following burden-shifting procedure in resolving FSIA immunity. Once the defendant foreign state makes a *prima facie* showing of FSIA immunity, the plaintiff has the burden of going forward with some facts showing that an exception to immunity applies. If the plaintiff offers such proof, the defendant must meet its ultimate burden of proving by a preponderance of the evidence that the exception does not apply." *In re Donald G. Atteberry, DVM, P.A.*, 1994 WL 191802*2 (D.Kan. Apr.6, 1994) (citing *Cargill Int'l S.A. v. M/T Pavel Dybenko*, 991 F.2d 1012, 1016 (2nd Cir. 1993); *Siderman de Blake v. Republic of Argentina*, 965 F.2d 699, 708 n. 9 (9th Cir.1992), *cert. denied*, 507 U.S. 1017, 113 S.Ct. 1812, 123 L.Ed.2d 444 (1993); *Arriba Ltd. v. Petroleos Mexicanos*, 962 F.2d 528, 533 (5th Cir.), *cert. denied*, 506 U.S. 956, 113 S.Ct. 413, 121 L.Ed.2d 337 (1992); *Gerding v. Republic of France*, 943 F.2d 521, 525 (4th Cir.1991), *cert. denied*, 507 U.S. 1017, 113 S.Ct. 1812, 123 L.Ed.2d 443 (1993); *Kao Hwa Shipping Co., S.A. v. China Steel Corp.*, 816 F.Supp. 910, 915 (S.D.N.Y.1993)); *see also Saudi Arabia v. Nelson*, 507 U.S. 349, 376, 113 S.Ct. 1471, 123 L.Ed.2d 47 (1993). When a question of subject matter jurisdiction arises in the context of a Rule 56(c) motion for summary judgment, the party invoking federal jurisdiction bears the burden of proving that subject matter jurisdiction exists. *See Bryce v. Episcopal Church in Diocese of Colorado*, 121 F.Supp.2d 1327, 1336 (D.Colo.2000) (citing *Marcus v. Kansas Dep't of Revenue*, 170 F.3d 1305, 1309 (10th Cir.1999)); *United States ex rel. Hafter D.O. v. Spectrum Emergency Care, Inc.*, 190 F.3d 1156, 1160 n. 5 (10th Cir. 1999) (whether subject matter jurisdiction

is raised under Rule 12(b)(1) or Rule 56, the plaintiff's burden remains the same—plaintiff must present affidavits or other evidence sufficient to establish the court's subject matter jurisdiction by a preponderance of the evidence). Thus, although this question presents itself under the Rule 56 rubric, the burden-shifting analysis necessary to find subject matter jurisdiction must be applied.

At the initial stages of this case the Nigerian Defendants moved to dismiss for lack of subject matter jurisdiction on the grounds of FSIA immunity pursuant to Fed.R.Civ.P. 12(b)(6). In *Southway v. Central Bank of Nigeria*, 994 F.Supp. 1299, 1307–09 (D.Colo.1998) I denied the motion, finding that jurisdiction was conferred by FSIA's commercial exception. That provision, 28 U.S.C. § 1605(a)(2), states:

> A foreign state shall not be immune from the jurisdiction of courts of the United States or of the States in any case ... in which the action is based: (1) upon a commercial activity carried on in the United States by the foreign state; or (2) upon an act performed in the United States in connection with a commercial activity of the foreign state elsewhere; or (3) upon an act outside the territory of the United States in connection with a commercial activity of the foreign state elsewhere and that act causes a direct effect in the United States; ....

28 U.S.C. § 1605(a)(2) (1994) (bracketed numbers added). I concluded that, assuming the truth of the Plaintiffs' allegations as required, jurisdiction was conferred by the third clause of § 1605(a)(2). After applying the applicable tests, I concluded that the Nigerian Defendants engaged in "commercial activity." I stated:

> It was alleged that a purported representative of NNPC entered into an agreement for the assignment of contract proceeds. The alleged agreement assigned to Mr. Brown the right to receive partial payment on a contract between NNPC and a foreign company, in consideration for usage of Mr. Brown's bank account to facilitate the transfer of over-invoiced funds. Alleged representatives of NNPC and CBN referred to the underlying contract as "Contract No. NNPC/PED/2039–X92" in their letters. The underlying contract between NNPC and the foreign country allegedly involved the supply of "Heavy Duty Crude Oil Passage Drilling Machines and Calibrators for Port–Harcourt, Warri, and Kaduna Refineries." Accepting plaintiffs' allegations as true, one can only conclude that the Nigeria defendants engaged in "commercial activity."

*Southway*, 994 F.Supp. at 1308, *aff'd*, *Southway v. Central Bank of Nigeria*, 198 F.3d 1210, 1216–18 (10th Cir.1999).

■ The Nigerian Defendants argued then, however, that even if the alleged conduct fell within the "commercial activity" exception, there was no proof the Nigerian Defendants actually participated in the fraud. The FSIA's commercial exception provides an exception from sovereign immunity only for commercial activity "by" or "of" a foreign state. *See* 28 U.S.C. § 1605(a)(2). Specifically, the Nigerian Defendants contended that the Nigerians who defrauded Plaintiffs falsely represented themselves as Nigerian officials, and attached affidavits supporting that assertion. Because these affidavits attacked the factual sufficiency of Plaintiffs' Complaint, I found jurisdiction, but granted Plaintiffs the opportunity to conduct limited discovery on the questions of agency and whether the Nigerian Defendants actually participated in the alleged conduct. *See Southway*, 994 F.Supp. at 1311, *aff'd*, 198 F.3d at 1218. I then stated that upon the completion of this limited discovery,

the Nigerian Defendants had permission renew their motion. *See id.* They do so now.

The parties do not dispute that Nigeria, CBN, and NNPC are "foreign states" as defined by the FSIA. *See, e.g., Adler v. Federal Republic of Nigeria,* 107 F.3d 720, 723 (9th Cir.1997); *Caribbean Trading and Fid. Corp. v. Nigerian Nat'l Petroleum Corp.,* 948 F.2d 111, 112 (2d Cir.1991); *Verlinden B.V. v. Central Bank of Nigeria,* 647 F.2d 320, 322 n. 4 (2d Cir.1981), *rev'd on other grounds,* 461 U.S. 480, 103 S.Ct. 1962, 76 L.Ed.2d 81 (1983). The Nigerian Defendants, therefore, have made a *prima facie* showing of sovereign immunity. Thus, Plaintiffs bear the burden of showing a specific exception of the FSIA or an existing international agreement conferring subject matter jurisdiction upon this court.

Plaintiffs argue that jurisdiction is conferred by the third clause of § 1605(a)(2), and that the actions of the parties they dealt with were actions "by" or "of" the Nigerian Defendants, as the perpetrators were linked to the Nigerian Defendants. Plaintiffs attach affidavits outlining their communications with various parties in Nigeria, and attempt to link the people with whom they dealt to the Nigerian Defendants. Plaintiffs took the deposition of a genuine CBN official named M.R. Rasheed. A man with an identical name, who called himself Dr. M.R. Rasheed, dealt with Plaintiffs in the course of their attempts to collect the $21,000,000. Mr. and Mrs. Brown aver that, "The declarant witnessed M.R. Rasheed testify for several hours at his deposition and can say that his voice is the same as the voice heard in the telephone conversations with the person identified as M.R. Rasheed." *See* Declaration of Kirk Brown at ¶ 19, Declaration of Helen Tomicich at ¶ 19, Plaintiffs' Exhibits Q at ¶ 19, R at ¶ 19; *see also* Plaintiffs' Exhibit R (discussing the telephone conversations Ms. Tomicich had with a Mr. Rasheed). Mr. Losavio's paralegal makes an identical statement. *See* Plaintiffs' Exhibit O at ¶ 5. The remainder of the declarations restate the facts and allegations in this case, but offer no proof that the parties with whom the Browns dealt were actual members of the Nigerian government or the CBN, rather than con artists posing as such.

Because the Plaintiffs have come forward with some facts showing that an exception to immunity applies, the Nigerian Defendants must meet their ultimate burden of proving by a preponderance of the evidence that the exception to the FSIA does not apply. *See In re Donald G. Atteberry, DVM, P.A.,* 1994 WL 191802, *2 (D.Kan. Apr.6, 1994). I conclude that they have done so. The Nigerian Defendants provide the signed declarations of three Nigerian officials: Victor Moore from CBN's Legal Department, Idenyemih Stella Omiyi of the Nigerian Ministry of Justice, and M.R. Rasheed, Director of CBN's Foreign Operations Department. *See* Defendants' Exhibits 22–24. In their declarations, Messrs. Moore and Omiyi state that Plaintiffs fell prey to an advanced fee fraud scam whereby private individuals in Nigeria impersonate employees of the Nigerian government. *See* Defendants' Exhibits 22 at 1; 23 at 2. Messrs. Moore and Omiyi state that neither CBN nor Nigeria authorize such scams or benefit from the fraudulently obtained money. Messrs. Moore, Omiyi, and Rasheed state that the letters attached to Plaintiffs' Complaint are forgeries. *See* Defendants' Exhibits 22 at 2; 23 at 2; 24 at 1. Mr. Moore states that the purported authors of the letters do not exist or are not known to him, with the exception of M.R. Rasheed, who Moore concedes is the director of CBN's Foreign Operations Department. *See* Defendants' Exhibit 22 at 2. Mr. Omiyi concedes that Major General Joe Garba is an actual per-

son, but contends that he is not currently an official of the Nigerian government. *See* Defendants' Exhibit 23 at 2. Mr. Rasheed states that he never wrote any of the letters attached to Plaintiffs' Complaint. Rasheed claims that such letters are forgeries. *See* Defendants' Exhibit 24 at 2.

The Nigerian Defendants further provide the deposition of M.R. Rasheed, in which he states that he never uses the title "Dr.", has had no dealings with the Plaintiffs in this case, does not reside or work at the numbers listed on the Plaintiffs' letters, was no way involved in this case, views the letters as forgeries, and believes that the Plaintiffs fell victim to a 419 scam. *See, e.g.,* Defendants' Exhibit 25 at 65, 141–43, 148–49, 151, 169, 209–14, 231–32. He also details the ways in which one schooled in Nigerian procedures and customs would be tipped off that a scam was occurring. These include the fact that the Nigerian currency is not traded on the international market outside of Nigeria, *see id.* at 133, 230, the departments and offices listed on the letters the Browns received do not exist, *see id.* at 213–14, the stamp fee in Nigeria is a small sum, equivalent to a filing fee, rather than the $213,200 charged Plaintiffs, *see id.* at 103, the CBN does not use the Nigerian government crest on its documents, *see id.* at 151, and the CBN does not keep accounts abroad in third parties' names. *See id.* at 139.

Finally, the Nigerian Defendants provide the declaration of Dr. David A. Crown, an expert in questioned documents. He states that the signatures of "M. R. Rasheed" received by the Browns on various correspondence are not the signatures of the authentic M.R. Rasheed, although they do appear to be written by one individual. *See* Declaration of David A. Crown at ¶ 4. The signatures of "M. Rasheed" received by the Browns on various correspondence are not the signatures

of the authentic M.R. Rasheed, and were not written by the same person who signed other letters "M. R. Rasheed." *See id.* at ¶ 5. The signatures of "Paul Ogwuma" received by the Browns are not the authentic signatures of Paul Ogwuma. *See id.* at ¶ 6. Finally, the letters received by the Browns are not authentic documents of the Central Bank of Nigeria. *See id.* at ¶ 7. Several of his conclusions are confirmed by the untrained eye. *See* Exhibits A and B attached to Declaration of David A. Crown. Given the quantity and quality of the evidence presented by the Nigerian Defendants, I conclude that they have meet their ultimate burden to prove by a preponderance of the evidence that the exception to the FSIA does not apply, and subject matter jurisdiction does not exist.

■ Plaintiffs argue, however, that they should be afforded additional discovery to show a link between the parties with whom they dealt and the Nigerian Defendants. I disagree. Under Fed.R.Civ.P. 56, a court may deny summary judgment or allow a continuance for further discovery "[s]hould it appear from the affidavits of a party opposing the motion that the party cannot for reasons stated present by affidavit facts essential to justify the party's opposition . . . ." Fed.R.Civ.P. 56(f). The protections of Rule 56(f) "can be applied only if a party satisfies certain requirements." *Price ex rel. Price v. Western Res., Inc.,* 232 F.3d 779 (10th Cir.2000). "A prerequisite to granting relief . . . is an affidavit furnished by the nonmovant . . . explain[ing] why facts precluding summary judgment cannot be presented." *Committee for the First Amendment v. Campbell,* 962 F.2d 1517, 1522 (10th Cir.1992). "This includes identifying the probable facts not available and what steps have been taken to obtain these facts." *Id.* The affidavit must also "state with specificity why extra time is needed and how the additional time

and material will rebut the summary judgment motion." *International Surplus Lines Ins. Co. v. Wyoming Coal Ref. Sys., Inc.,* 52 F.3d 901, 905 (10th Cir.1995) (citing *Jensen v. Redevelopment Agency of Sandy City,* 998 F.2d 1550, 1554 (10th Cir.1993)). Mere assertion that discovery is incomplete or that specific facts necessary to oppose summary judgment are unavailable is insufficient to invoke Rule 56(f). *Id.* (citing *Pasternak v. Lear Petroleum Exploration, Inc.,* 790 F.2d 828, 833 (10th Cir.1986)).

Here, Plaintiffs have failed to meet these requirements. Further, issues of discovery have been extensively litigated before the Magistrate Judge. I have already denied Plaintiffs' motion to continue the trial, a motion which was based on similar arguments. Trial is set for approximately one month from now. I therefore conclude that a delay for further discovery is unwarranted. Accordingly, IT IS ORDERED that:

1. Defendants' motion for summary judgment is GRANTED;

2. Claims against Defendants Central Bank of Nigeria and Republic of Nigeria are DISMISSED; and

3. Costs are awarded to Defendants Central Bank of Nigeria and Republic of Nigeria.