**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**MAY 13 2003**

**PATRICK FISHER**
**Clerk**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

_____

HENRY T. SOUTHWAY, also known as
Butch Southway; DOUGLAS
HOUGHTON, also known as Doug
Houghton; J.E. LOSAVIO, JR.,

      Plaintiffs-Appellants,

  and

SOUTHWAY CONSTRUCTION
COMPANY; RANDY THURSTON;
RUSS GRAY, doing business as Gray
Real Estate,

      Plaintiffs,

v.

CENTRAL BANK OF NIGERIA;
REPUBLIC OF NIGERIA,

      Defendants-Appellees,

  and

KIRK PATTERSON BROWN, doing
business as The Communications
Connection, also known as Kirk P.
Brown, doing business as The
Communications Connection; HELEN
TOMICICH BROWN, doing business as
The Communications Connection,

      Defendants-Appellants.

No. 01-1436

Submitted on the briefs:

Max Addison Wilson, Esq., Pueblo, Colorado, for Plaintiffs-Appellants and Defendants-Appellants.

Robert J. Brown, David H. Fromm, and Fred G. Wexler of Brown, Gavalas & Fromm LLP, New York, New York, for Defendants-Appellees.

Before **HENRY**, Circuit Judge, and **HOLLOWAY** and **BRORBY**, Senior Circuit Judges.

**HOLLOWAY**, Senior Circuit Judge.

After examining the briefs and appellate record, this panel has determined unanimously to grant the parties' request for a decision on the briefs without oral argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34 1(G). The case is therefore ordered submitted without oral argument.

This suit alleges fraud perpetrated by the government of Nigeria. Nigeria asserts its sovereign immunity. The victims of the fraud counter by invoking the "commercial activity" exception to the federal statute codifying a foreign state's immunity, the Foreign

- 2 -

Sovereign Immunities Act of 1976, 28 U.S.C. § 1330 *et seq*. (FSIA).[1] We agree with the district court's conclusion that the Nigerian defendants have proven that the commercial activity exception to the FSIA does not apply, and accordingly affirm.

## I.

The facts of this case are set out extensively elsewhere, including in an earlier published opinion from this court and two published decisions by the district court. *See Southway v. Cent. Bank of Nigeria*, 198 F.3d 1210, 1212-13 (10th Cir. 1999); *Southway v. Cent. Bank of Nigeria*, 149 F. Supp. 2d 1268, 1269-72 (D. Colo. 2001); and *Southway v. Cent. Bank of Nigeria*, 994 F. Supp. 1299, 1302-04 (D. Colo. 1998). We give only an abbreviated version here. The second opinion above, appearing in 149 F. Supp. 2d at 1268, which granted summary judgment to the defendants for lack of subject matter jurisdiction under the FSIA on July 5, 2001, is the opinion on appeal for disposition by us now.

---

[1] The "commercial activity" exception appears in 28 U.S.C. § 1605:

> (a) A foreign state shall not be immune from the jurisdiction of courts of the United States or of the States in any case –
> . . .
> (2) in which the action is based upon a commercial activity carried on in the United States by the foreign state; or upon an act performed in the United States in connection with a commercial activity of the foreign state elsewhere; or upon an act outside the territory of the United States in connection with a commercial activity of the foreign state elsewhere and that act causes a direct effect in the United States . . . .

In November 1995 Kirk Brown, a lawyer practicing in Pueblo, Colorado, was contacted by a person claiming to be a Nigerian citizen representing a Nigerian construction firm. The person told Brown that the Nigerian government owed his firm $21 million as payment for building a major oil pipeline. He further said that the government was searching for an offshore account in which to deposit the money, as well as an escrow agent to settle all claims by subcontractors and suppliers. Brown, through a company he operates, the Communications Connection, agreed to become the escrow agent. In return he would receive a portion of the proceeds deposited into the escrow account.

During the next few months, Brown, along with his wife and business partner Helen Tomicich Brown, exchanged several letters and faxes with individuals claiming to represent the Nigerian government and its central bank. The documents they received from Nigeria all appeared on official-looking letterhead, bearing various stamps and signatures. Over time, the Browns learned that before the proceeds from the pipeline construction project could be disbursed to their escrow account they would have to pay certain up-front taxes and fees, such as a "stamp duty," a "bond fee," and "exchange rate levies." The Browns wired payment of these fees into accounts established at different New York banks. They also paid three men, whom they met in Vienna, Austria, $10,000 in cash as a "handling fee" related to what they called "the contract."

Short of funds necessary to pay all the costs, the Browns recruited several investors, all of whom were promised lucrative returns for their contributions once the money from Nigeria arrived. In total, the Browns, who raised approximately $500,000 from their investors, paid more than $700,000 in putative fees, taxes, and other costs. The proceeds from the construction project were never deposited into the escrow account. The Browns, victims of a classic advance-fee scam, were unable as a result to fulfill their obligations to their investors.

In the instant suit the investors sued the Browns, the Communications Connection, as well the Central Bank of Nigeria (CBN) and the Republic of Nigeria, alleging a violation of the Racketeer Influenced and Corrupt Organizations Act of 1970 (RICO), 18 U.S.C. § 1961 *et seq*. In turn, the Browns filed a similar third-party complaint against the Nigerian government and its central bank (the Nigerian defendants).

As they have from the lawsuit's inception, the Nigerian defendants deny any involvement in the scam that defrauded the Browns and their investors. They claim that all documents purportedly written by Nigerian officials were forgeries, that imposters posed as Nigerian government officials, and that the Browns and their investors fell victim to a scheme known in Nigeria as a "419" scam, which takes its name from the section of Nigeria's criminal code that prohibits such advance-fee frauds.[2]

---

[2] The United States government and the Nigerian government have issued repeated warnings about the 419 scam, and it has been a fount of litigation across the country. *See Keller v. Cent. Bank of Nigeria*, 277 F.3d 811 (6th Cir. 2002); *Adler v. Fed. Republic of Nigeria*, 219 F.3d 869 (9th Cir. 2000); *Intercontinental Res., N.A. v. Fed. Republic of Nigeria*, No.

## II.

This is not the first time this controversy has been before us. Two years ago, a panel of this court rejected an interlocutory appeal brought by the Nigerian defendants. That appeal sprang from a ruling by the district court denying the Nigerian defendants' motion to dismiss, which they asserted on sovereign immunity grounds under the Foreign Sovereign Immunities Act, 28 U.S.C. § 1330 *et seq*. Viewing only the allegations stated in the complaint, and accepting them as true, this court held that the Nigerian defendants were subject to suit. *Southway v. Cent. Bank of Nigeria*, 198 F.3d at 1217-18. The panel concluded that the facts set out in the complaint implicated an exception to the statute's grant of immunity, an exception carved out of the statute to allow suits "based upon a commercial activity carried on in the United States by the foreign state." 28 U.S.C. § 1605(a)(2).[3]

The case returned to the district court, where the parties conducted a lengthy and contentious round of discovery. The Nigerian defendants later renewed their immunity

_____

98-CIV-5114, 1999 WL 219909 (S.D.N.Y. Apr. 15, 1999).

[3] To be precise, we determined that the mere illegality of an act does not necessarily negate its commercial character. We therefore held that the commercial activity exception vested subject matter jurisdiction in the district court, at least at the motion to dismiss stage. *Southway*, 198 F.3d at 1217-18. *See also Adler v. Fed. Republic of Nigeria*, 219 F.3d at 875 ("The fact that the contract was for an illegal purpose . . . does nothing to destroy its commercial nature."); *Keller v. Cent. Bank of Nigeria*, 277 F.3d at 816 (holding that any fraud and bribery involved in the scheme did not bar application of commercial activity exception).

The full text of 28 U.S.C. § 1605 (a) (2), which embodies the commercial activity exception, appears in n.1, *supra*.

claim, this time in a motion for summary judgment. They asserted that the Browns and their investors failed to uncover facts sufficient to support the so-called "commercial activity" exception on which they relied to pierce the Nigerian defendants' immunity. The district court agreed and ruled that subject matter jurisdiction over the Nigerian defendants was wanting and granted them summary judgment. *Southway,* 149 F. Supp. 2d. at 1278. The Browns and their investors (the plaintiff-appellants) now appeal the district court's grant of summary judgment on several grounds.

The Appellants' Opening Brief, p. 2, states the contentions on appeal made by the plaintiff-appellants as follows: (1) the trial court abused its discretion in failing to enter sanctions against the Nigerian defendants for discovery violations; (2) the court misread and improperly weighed the evidence and declined to give weight to the evidence of the plaintiff-appellants; and (3) the court abused its discretion by denying plaintiff-appellants a continuance. The principle arguments of the plaintiff-appellants focus on issue (2) and the controlling question of subject matter jurisdiction under the Foreign Sovereign Immunities Act, and the exception to the statute "based upon a commercial activity carried on in the United States by the foreign state. . . . " 28 U.S.C. § 1605(a)(2). Because of its predominant importance in our disposition, we will turn first to our analysis of the FSIA and its commercial activity exception.

# III.

The FSIA is the exclusive source of jurisdiction for claims against foreign states or their instrumentalities in the courts of this country. *Argentine Republic v. Amerada Hess Shipping Corp.*, 488 U.S. 428, 443 (1989). A foreign state is presumptively immune under the statute and remains so unless one of the specific statutory exceptions applies. *See* 28 U.S.C. § 1605 (listing exceptions). Subject matter jurisdiction depends on the existence of an exception. *Verlinden B.V. v. Cent. Bank of Nigeria*, 461 U.S. 480, 493 & n.20 (1983). "Once a foreign state makes a prima facie showing of immunity, the plaintiff seeking to litigate in the United States then has the burden of showing that an exception applies." *Gen. Elec. Capital Corp. v. Grossman*, 991 F.2d 1376, 1382 (8th Cir. 1993). If the plaintiff comes forward with evidence implicating an exception, the defendant must meet its ultimate burden of proving that the exception does not apply. *Cargill Int'l S.A. v. M/T Pavel Dybenko*, 991 F.2d 1012, 1016 (2d Cir. 1993).

Here the plaintiff-appellants accept the proposition that the Nigerian defendants are foreign states as that term is defined by the FSIA, and thus they accept the fact that the Nigerian defendants have made a prima facie showing of sovereign immunity.[4] However,

---

[4] In their complaint the plaintiff-appellants state:

> The defendant Central Bank of Nigeria is an agency or instrumentality of the defendant Republic of Nigeria, as defined in 28 U.S.C. § 1603(b). The defendant, Republic of Nigeria . . . is a foreign state as defined in the FSIA and to which said Act applies.

1 App. 31 (Complaint).

- 8 -

they challenge the district court's view that their suit cannot overcome that immunity by means of the commercial activity exception. Under this exception to the FSIA's grant of immunity, a plaintiff may sue a foreign state if the action is based upon commercial activity "by" or "of" the foreign state:

> A foreign state shall not be immune from the jurisdiction of courts of the United States or of the States in any case–
>
> ....
> (2) in which the action is based upon a commercial activity carried on in the United States by the foreign state; or upon an act performed in the United States in connection with a commercial activity of the foreign state elsewhere[.]

28 U.S.C. § 1605(a)(2). This statutory exception reflects Congress's intent to restrict a foreign state's immunity "'to cases involving acts of a foreign state which are sovereign or governmental in nature, as opposed to acts which are either commercial in nature or those which private persons normally perform.'" *Southway v. Cent. Bank of Nigeria*, 198 F.3d at 1216 (quoting legislative history).

## IV.

The Nigerian defendants moved below for summary judgment, arguing that the district court lacked subject matter jurisdiction as they are immune from suit under the Foreign Sovereign Immunities Act. After reviewing the summary judgment materials and the briefs submitted, the judge granted the motion for summary judgment, dismissed the

claims against the Central Bank of Nigeria and the Republic of Nigeria, and awarded costs to the bank and the republic. 149 F. Supp. 2d at 1278. The ruling was announced in a persuasive and detailed opinion whose findings and conclusions are convincing to us. *See* 149 F. Supp. 2d 1268-1278.

We review the district court's legal conclusions *de novo* and its factual findings for clear error in view of the factual challenge to subject matter jurisdiction. *Holt v. United States*, 46 F.3d 1000, 1003 (10th Cir. 1995). Here the district judge held that given "the quantity and quality of the evidence presented by the Nigerian defendants, I conclude that they have [met] their ultimate burden to prove by a preponderance of the evidence that the [commercial activity] exception to the FSIA does not apply, and subject matter jurisdiction does not exist." *Southway*, 149 F. Supp. 2d at 1277. The district judge based his decision on three parts of the evidence: the signed declarations of three Nigerian officials, the deposition of M.R. Rasheed, and the declaration of Dr. David A. Crown, an expert in questioned documents.

We feel that the district judge did not clearly err in his factual findings regarding the signed declarations of Mr. Victor Moore from CBN's Legal Department, Idenyemih Stella Omiyi of the Nigerian Ministry of Justice, and M.R. Rasheed, Director of CBN's Foreign Operations Department. In their declarations, Moore and Omiyi both state that plaintiffs were involved in an advanced fee fraud scam through which private individuals

in Nigeria impersonate employees of the Nigerian government.  IV App. 717 (Moore declaration); IV App. 723 (Omiyi declaration).

Moore states that neither CBN nor Nigeria authorize such scams or benefit from the fraudulently obtained money.  IV App. 718 (Moore declaration).  Omiyi asserts that the Nigerian government does not authorize these scams and their commission constitutes a violation of the Nigerian criminal code.  IV App. 723 (Omiyi declaration).  Moore, Omiyi, and Rasheed state that the letters attached to plaintiffs' complaint are forgeries.  IV App. 718-20 (Moore declaration); IV App. 723 (Omiyi declaration); IV App. 726-7 (Rasheed declaration).  Moore says that the alleged authors of the letters do not exist or are unknown to him, except M.R. Rasheed, who Moore admits is the director of CBN's Foreign Operations Department.  IV App. 718-20 (Moore declaration).  Omiyi admits that Major General Joe Garba is an actual person, but claims that he has "been retired for several years and . . . has never acted or been authorized to act as Chairman of any such entity as a 'Foreign Exchange Allocation Department.'"  IV App. 723 (Omiyi declaration).  Finally Rasheed states that he did not write either of the letters attached to plaintiffs' complaint which bear his name and that both are forgeries.  IV App. 726-27 (Rasheed declaration).  Thus the district judge's factual findings regarding the declarations of Moore, Omiyi, and Rasheed are fully supported by the record.

Further, we hold that the district judge did not clearly err in his factual finding concerning the deposition of M.R. Rasheed.  A review of the record reveals that in his

deposition, Rasheed states that he has never referred to himself as Dr. M. Rasheed. IV App. 738. Rasheed also claimed not to have met any of the plaintiffs in this or any other 419 case except during depositions, IV App. 737 (Rasheed deposition 170-71). The district judge is correct that Rasheed "details the ways in which one schooled in Nigerian procedures and customs would be tipped off that a scam was occurring." *Southway*, 149 F. Supp. 2d at 1277. The record shows that Rasheed stated that the Nigerian currency is not traded on the international market outside of Nigeria, IV App. 734 (Rasheed deposition 133), IV App. 739 (Rasheed deposition 230). The departments and offices listed on the letters the Browns received do not exist, IV App. 738 (Rasheed deposition 213-14); stamp fees in Nigeria "are not handled by the Central Bank" and do not involve foreign citizens or corporations, IV App. 733 (Rasheed deposition 103); the CBN does not use the Nigerian government crest on its documents, IV App. 736 (Rasheed deposition 151); and the CBN does not keep accounts abroad in third parties' names. IV App. 735 (Rasheed deposition 138-39).

Lastly we find no error in the district judge's factual findings regarding the declaration of Dr. Crown. The record shows that the district court is correct that Dr. Crown states that the signatures of "M.R. Rasheed" on four letters "were not written by M.R. Rasheed." In addition, the signatures on these letters "appear to be the writing of one individual." IV App. 762, ¶ 4 (Crown declaration). The record reveals that Dr. Crown also states that the signatures of "M. Rasheed" on other correspondence are

not the signatures of the authentic M.R. Rasheed, and were not written by the same person who signed other letters "M.R. Rasheed." IV App 763-3, ¶ 4 (Crown declaration). In addition, the signatures of "P.A. Oguma" and "B. Ogama" received in other documents are not authentic signatures of Paul Ogwuma. IV App 763, ¶ 6. Further Dr. Crown states that numerous documents which purport to be from the Central Bank of Nigeria are not authentic. IV App 763, ¶ 7. Thus we conclude that the district judge did not err in any of his findings regarding Dr. Crown's declaration.

Whether subject matter jurisdiction is raised under Rule 12(b)(1) or Rule 56, the plaintiff's burden remains the same–plaintiff must present affidavits or other evidence sufficient to establish the court's subject matter jurisdiction by a preponderance of the evidence. *United States ex rel. Hafter v. Spectrum Emergency Care, Inc.*, 190 F.3d 1156, 1160 n.5 (10th Cir. 1999). The district judge here concluded that the plaintiffs had come forward with some facts showing that an exception to immunity applies, and the Nigerian defendants had to satisfy their ultimate burden of proof by a preponderance of the evidence that the exception to the FSIA does not apply. 149 F. Supp. 2d at 1276. We are persuaded by the district judge's conclusion that, on this summary judgment record, the commercial activity exception to the FSIA did not apply. The Nigerian defendants, as the judge found, provided proof that the plaintiffs fell prey to an advanced fee scam in which private individuals in Nigeria impersonated employees of the Nigerian government and its agency. We conclude that the Nigerian defendants have established that the perpetrators

- 13 -

of the fraud were neither agents nor employees of the Nigerian government and for this reason the commercial activity exception to the FSIA does not apply.

## V.

We are persuaded that the district judge did not abuse his discretion by not affording an opportunity for additional discovery to the plaintiffs. There was no proper Fed. R. Civ. P. 56 affidavit submitted showing with specificity why extra time was needed and how that time and material that was sought would rebut the summary judgment motion. *Int'l Surplus Lines Ins. Co. v. Wyo. Coal Ref. Sys., Inc.*, 52 F.3d 901, 905 (10th Cir. 1995). Moreover we agree with the judge that issues about discovery had been extensively litigated before the magistrate judge so that further delay for discovery was unwarranted.

## VI.

In sum, the findings of the judge are not clearly erroneous and his conclusions were sound. Accordingly the decision granting summary judgment, dismissing claims against the defendants Central Bank of Nigeria and the Republic of Nigeria, and the award of costs is

AFFIRMED.