Will TOLLIVER and Tradco Inc.,
a Michigan Corporation,
Plaintiffs,

v.

FEDERAL REPUBLIC OF NIGERIA,
Central Bank of Nigeria, Nigerian National Petroleum Corporation, and Donald E. Kilpatrick, Defendants.

No. 1:01–CV–290.

United States District Court,
W.D. Michigan,
Southern Division.

June 6, 2003.

T.R. Knecht, Grand Rapids, MI, for Plaintiffs.

David J. Gass, Grand Rapids, MI, David H. Fromm, New York City, for Defendants.

## OPINION

ENSLEN, District Judge.

Sing, siren, for thyself, and I will dote; Spread o'er the silver waves thy golden hairs, And as a bed I'll take them, and there lie.[1]

## INTRODUCTION

This matter is before the Court on Plaintiffs Will Tolliver and Tradco, Inc.'s Motion for Summary Judgement. It is also before the Court on the cross-motion for summary judgment of Defendants Federal Republic of Nigeria ("FRN"), Central Bank of Nigeria ("CBN") and Nigerian National Petroleum Corporation[2] ("NNPC") (collectively, "Governmental Defendants"). Upon review of the briefing, the Court determines that these motions can be resolved without additional argument or hearing. *See* W.D. Mich. L. Civ. R. 7.2(d).

## BACKGROUND

Plaintiffs filed this suit on May 9, 2001, alleging fraud and breach of contract against Governmental Defendants. On December 20, 2002, Plaintiffs were permitted leave to amend their Complaint to add

---

**1.** William Shakespeare, *The Comedy of Errors,* act 3, sc. 2, l. 47–9.

**2.** NNPC is owned (either completely or by a majority of shares) by the government of Nigeria, and therefore is also considered a "sovereign" under the Foreign Sovereigns Immunity Act of 1976. *See Dole Food Co. v. Patrickson,* —— U.S. ——, 123 S.Ct. 1655, 1660–61, 155 L.Ed.2d 643 (2003).

an additional party, Donald E. Kilpatrick. The First Amended Complaint was filed the same day. (*See* Dkt. No. 76.) Donald Kilpatrick is a Texas resident who, according to the First Amended Complaint, represented to Plaintiffs that he could assist them in obtaining payment from the Governmental Defendants. (First Amended Complaint, at ¶ 13.)

Plaintiffs' First Amended Complaint is stated in 10 counts. Counts I–V, IX and X are against Governmental Defendants only. (*Id.* at ¶ 1.) Count VI is against both Governmental Defendants and Defendant Kilpatrick. (*Id.*) Counts VII and VIII are only against Defendant Kilpatrick. (*Id.*)

Count I alleges breach of a June 1993 contract between Plaintiffs and NNPC. The contract promises payment by NNPC of $25 million in exchange for Plaintiffs providing technical advice to correct misalignment of a petroleum pipeline. (Gov't Defs.' Exh. C.) The NNPC contract was also purportedly guaranteed by the other Governmental Defendants, according to the supposed contract documentation. (*Id.*) Plaintiffs allege that they provided technical advice to correct pipeline misalignment to representatives of the NNPC, relating to the pipeline bedding conditions and pipeline weight. (First Amended Complaint, at ¶ 18.) Notwithstanding, Plaintiffs were not paid and now seek such payment. Count IX (which is redundant) also alleges breach of contract by Governmental Defendants in failing to pay the contract funds. (*Id.* at ¶ 83.)

Count II alleges fraudulent misrepresentation, to wit that Governmental Defendants misrepresented their authority, misrepresented the approval of officials in the Nigerian Government, and misrepresented that payment would be forthcoming on deposit of certain fees with the Governmental representatives. (*Id.* at ¶ 54.) Allegedly, Plaintiff both paid $500,000 in fees and pledged $30 million in Tradco, Inc.

stock to facilitate payment of the contract amounts. (*Id.* at ¶ 56.) Count X alleges the similar misconduct based on the theory of innocent misrepresentation. (*Id* at ¶¶ 88–91.)

Count III alleges promissory estoppel as a basis for holding Governmental Defendants liable on the NNPC contract. Plaintiffs allege detrimental reliance on promises of Governmental Defendants, including Plaintiffs' provision of consulting services and payment of advance fees on the contract. (*Id.* at ¶ 58.) Count IV states essentially the same claims under an "unjust enrichment" theory. (*Id.* at ¶¶ 61–62.) Similarly, Count V seeks the same relief based on a theory of *quantum meruit.* (*Id.* at ¶¶ 67–68.)

Count VI alleges that Governmental Defendants and Defendant Kilpatrick engaged in a civil conspiracy to defraud Plaintiffs of both the funds paid to them and the value of the services rendered. (*Id.* at ¶¶ 70–71.)

Plaintiffs have filed evidence generally supporting the factual contentions in the Complaint. This evidence includes, most principally, the Affidavit of Will Tollivar which described how he entered into the contract after telephone conversations with supposed employees and officers of the Governmental Defendants including a "John Ogbal" of the NNPC, fulfilled his term of the contract (*i.e.*, provided many hours of technical consulting, including project drawings), and made advance payments to obtain his contract award. (Tollivar Aff.) Larry Magnuson, a mechanical engineer, has supported Tollivar's claims in his Affidavit, which states that in 1993 he, working with Tollivar, prepared technical drawings relating to pipelines in connection with a project supposedly for the NNPC. (Magnuson Aff.)

■ Plaintiffs' evidence includes an Affidavit of Donald Kilpatrick, which purports

to identify one of the government officials involved in the contract process—Dan Azumi Ibrahim—based on a meeting in London between Ibrahim and Kilpatrick at an official ministry of the Nigerian Government.[3] (Kilpatrick Aff.) However, since the making of the affidavit, Kilpatrick has essentially recanted it by asserting his Fifth Amendment right against self-incrimination in response to questions about his involvement in the events giving rise to this case and particularly in response to questions about the alleged meeting between himself and Ibrahim. (Kilpatrick Dep. at 7–16.)

Given the assertion of the Fifth Amendment, the Court will strike the Kilpatrick Affidavit because consideration of the Kilpatrick Affidavit would be grossly unfair to the Governmental Defendants given their inability to test the statements through discovery and cross-examination. *See In re Edmond,* 934 F.2d 1304, 1308 (4th Cir. 1991) (striking affidavit after assertion of Fifth Amendment rights by affiant and citing authorities); *United States v. Parcels of Land,* 903 F.2d 36, 43 (1st Cir.1990) (same); *United States v. Inc. Village of Island Park,* 888 F.Supp. 419 (E.D.N.Y. 1995). This control on affiant testimony is necessary to any system of due process because otherwise the use of such testimony would be an open invitation to "mutilate the truth." *Brown v. United States,* 356 U.S. 148, 156, 78 S.Ct. 622, 2 L.Ed.2d 589 (1958).

Another piece of evidence offered by Plaintiffs is the transcript of a telephone conversation purportedly between Donald Kilpatrick and Dan Ibrahim. (Pls.' Exhibit L.) However, this evidence is valueless in that the participation of Ibrahim in the telephone conversation was only authenticated by Kilpatrick and not by any independent source with personal knowledge of the voice of Ibrahim.[4] *See* Fed.R.Evid. 901(b)(5).

■ Plaintiffs have also offered a number of "internet" documents as exhibits. The documents are simply news postings on the internet. Those documents are rife with hearsay and were not properly authenticated by persons with personal knowledge. Therefore, those documents will be stricken since they do not constitute proper evidence under Rule 56(e). *See also St. Clair v. Johnny's Oyster & Shrimp, Inc.,* 76 F.Supp.2d 773, 775 (S.D.Tex.1999) (stating that unverified "evidence procured off the Internet is adequate for almost nothing ..."); *Pirelli Armstrong Tire Corp. v. Titan Tire Corp.,* 4 F.Supp.2d 794 (C.D.Ill.1998) (excluding magazine articles as hearsay).

Finally, Plaintiffs have cited a number of discovery disputes between the parties as a reason for denying summary judgment to Governmental Defendants. These are cited for the purpose of indicating that Governmental Defendants (in Plaintiffs' judgment) were not cooperative during the course of discovery. Governmental Defendants, on the other hand, argue that the discovery has been sufficient and that, in any event, Plaintiffs' complaints now come too late. Some of Plaintiffs' complaints about discovery were also the subject of earlier orders by Magistrate Judge Joseph G. Scoville, which sought to provide sufficient, though limited, discovery to Plaintiffs. (*See* Order of Dec. 27, 2002.)

Governmental Defendants' theory of this case is that the events described in the

---

**3.** Plaintiffs explain in their Reply Brief that this person may also have been the son of Dan Azumi Ibrahim—one "Aliyu" Ibrahim—though that name is variously ascribed to both father and son. (*See* Pls.' Reply, at 18.)

**4.** Tollivar explained in his affidavit that he could verify the voice of Kilpatrick, but not the other speaker. (Tollivar Aff. at ¶ 20).

Complaint are acts of criminal fraud by individuals having no association or connection with the sovereign state of Nigeria or any of its political departments. Governmental Defendants term the particular kind of fraud involved in this case as a "419" scam, referring to chapter 77, section 419 of the Nigerian Criminal Code which outlaws such scams. (Moses O. Adediran Decl. at ¶ 5.) *See also, e.g., Southway v. Central Bank of Nigeria,* 149 F.Supp.2d 1268, 1272 (D.Colo.2001), *aff'd,* 328 F.3d 1267 (10th Cir.2003).

Typical "419" scams are operated by individuals, who pose as Nigerian government officials or businessmen, offering to pay fantastic sums of money on government contracts. The victim is, typically, induced to make a series of "advance fee" payments as a condition for the receipt of the contract award. Of course, when the victim becomes dissatisfied, then the imposters disappear. *See, e.g., United States v. Scott–Emuakpor,* 2000 WL 288443, at *1 (W.D.Mich.2000). The propensity of these scams to bilk unknowing Americans is such that the United States State Department has issued official warnings about these scams to its citizens. (Adediran Decl. at ¶ 11; Gov't Defs.' Exh. F.)

To support this theory of the case, Governmental Defendants have provided the Declarations of Otu Medo (the Acting General Manager of the Litigation Property Law Department of the NNPC) and Moses Adediran (the Director of the Legal Department of the CBN). Otu Medo declares that he has inspected the various contract documents filed by Plaintiffs and that they are fakes. (Medo Decl. at ¶ 12.) This declaration is based on the failure of

Plaintiffs to engage in the kind of competitive bidding process used by the NNPC in contract awards in 1993, the absence of any official records of the NNPC supporting the existence of such a contract, the absence of six "officials" named by Plaintiffs from the employee rolls of the NNPC, and the use of fake telephone numbers, employee names and account numbers in the contract documentation. (*Id.* at ¶¶ 4–18.) Among the fraud described by Medo is the fact that the NNPC never employed a "Director of Contracts" or the person named as the signatory of the supposed NNPC contract. (*Id.* at ¶ 5.)

As for the Declaration of Moses Adediran, it describes in general terms the kinds of conduct associated with 419 scams. (Adediran Decl. at ¶¶ 1–10.) These scams have included, in the past, the promise to deliver millions of dollars in U.S. currency to the fraud victim if the fraud victim purchases a special solution to "clean" the marketed bills. (*Id.* at ¶ 10.) The currency scam description relates to some of Plaintiffs' allegations in which it is alleged that purported governmental officials displayed cash which need to be washed in a special solution before it could be paid to Plaintiffs. Of course, by the time the solution was purchased, the cash was not to be found.[5] (First Amended Complaint, at ¶ 41.)

Adediran further declares that the alleged contracts with the CBN or the Nigerian Government are fakes and that those entities have no official records of any such contracts. (Adediran Decl. at ¶ 12.) Adediran makes this declaration in part based on his investigation which showed that some dozen persons named by

---

5. The English court developed the concept of the "badges of fraud" to describe certain objective conduct which can be presumed fraudulent. *BFP v. Resolution Trust Corp.,* 511 U.S. 531, 540, 114 S.Ct. 1757, 128 L.Ed.2d 556 (1994). This described conduct warrants a higher place in the hierarchy of fraud. It is not a "badge of fraud," it is a "crown" or "scepter." With this said, this does not mean that government officials were responsible for this conduct, as the Adediran Declaration makes clear.

Plaintiffs as officials of the CBN are not officials of the CBN. (*Id.* at ¶ 13.) It is also based on his examination of documents allegedly signed by Governor Joseph Sanusi, and other contract documents, which showed them to be frauds because inconsistent with the form and practice of documents genuinely prepared by officials of the CBN. (*Id.* at ¶¶ 15–27.) Some of the documents are also clearly fake due to their authorship by persons not on the CBN's employee rolls. (*Id.*)

Governmental Defendants have submitted the Declaration and Report of an expert document examiner, David A. Crown. Crown has examined some 27 documents which form the basis of Plaintiffs' claims for relief. According to Crown, none of the documents are authentic. (Crown Report at 6; Crown Decl. at ¶¶ 4–8.) The reasons for these conclusions include: (1) some documents have distorted logos of the CBN which were prepared by use of a computer scanner; (2) the signatures of some named "officials" are inconsistent with one another (meaning that they were authored by multiple persons); (3) the signatures of some officials with different names were written by the same person; (4) some signatures are enlarged exact copies of other signatures (suggesting that they were prepared by copying, scanning or transposition); and (5) some document logos do not conform to official document logos of the Nigerian Government. (Crown Report at ¶¶ 1–11.)

Plaintiffs have failed to supply any expert document analysis to controvert the document analysis performed by Crown. Plaintiffs have likewise failed to submit any evidence of persons with personal knowledge of the workings of the Nigerian Government to controvert the Declarations of Medo and Adediran.

## STANDARDS FOR SUMMARY JUDGMENT

Both cross-motions are brought pursuant to Federal Rule of Civil Procedure 56. Under the language of Rule 56(c), summary judgment is proper if the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. The initial burden is on the movant to specify the basis upon which summary judgment should be granted and to identify portions of the record which demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The burden then shifts to the non-movant to come forward with specific facts, supported by the evidence in the record, upon which a reasonable jury could find there to be a genuine fact issue for trial. *Anderson v. Liberty Lobby*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). If, after adequate time for discovery on material matters at issue, the non-movant fails to make a showing sufficient to establish the existence of a material disputed fact, summary judgment is appropriate. *Celotex Corp.*, 477 U.S. at 323, 106 S.Ct. 2548. While this analysis assumes the adequacy of discovery, a party cannot oppose summary judgment based on vague generalizations that discovery has been inadequate. Rather, under the language of Rule 56 and the case law of this Circuit, a party urging that discovery has been insufficient must file a specific affidavit establishing that "the party cannot for reasons stated present by affidavit facts essential to justify the party's opposition." Fed. R.Civ.P. 56(f); *Klepper v. First Am. Bank*, 916 F.2d 337, 343 (6th Cir.1990); *Plott v. General Motors Corp., Packard Elec. Div.*, 71 F.3d 1190, 1196 (6th Cir.1995).

In assessing evidence, credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences are jury functions. *Adams v. Metiva,* 31 F.3d 375, 382 (6th Cir.1994). The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in the non-movant's favor. *Celotex Corp.,* 477 U.S. at 323, 106. S.Ct. 2548 (quoting *Anderson,* 477 U.S. at 255, 106 S.Ct. 2505). The factual record presented must be interpreted in a light most favorable to the non-movant. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

Rule 56 limits the materials the Court may consider in deciding a motion under the rule: "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits." *Copeland v. Machulis,* 57 F.3d 476, 478 (6th Cir.1995) (quoting Federal Rule of Civil Procedure 56(c)). Moreover, affidavits must meet certain requirements:

> [A]ffidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein. Sworn or certified copies of all papers or parts thereof referred to in an affidavit shall be attached thereto or served therewith.

Fed.R.Civ.P. 56(e).

■■■ In accordance with Rule 56(e), the Sixth Circuit has held "that documents submitted in support of a motion for summary judgment must satisfy the requirements of Rule 56(e); otherwise, they must be disregarded." *Moore v. Holbrook,* 2 F.3d 697, 699 (6th. Cir.1993). Thus, in resolving a Rule 56 motion, the Court should not consider unsworn or uncertified documents, *Id.,* unsworn statements, *Dole v. Elliott Travel & Tours, Inc.,* 942 F.2d 962, 968–969 (6th Cir.1991), inadmissible expert testimony, *North American Specialty Ins. Co. v. Myers,* 111. F.3d 1273, 1280 (6th Cir.1997), or hearsay evidence, *Hartsel v. Keys,* 87 F.3d 795, 799 (6th Cir.1996); *Wiley v. United States,* 20 F.3d 222, 225–226 (6th Cir.1994). Thus, "[a] party opposing a motion for summary judgment cannot use hearsay or other inadmissible evidence to create a genuine issue of material fact." *Sperle v. Michigan Dept. of Corrections,* 297 F.3d 483, 495 (6th Cir.2002) (quoting *Weberg v. Franks,* 229 F.3d 514, 526 n. 13 (6th Cir.2000)).

## *ANALYSIS*

### 1. Discovery

■■■ Preliminary to the questions of sovereign immunity and subject matter jurisdiction, this Court must address Plaintiffs' arguments that much of the Governmental Defendants' evidence should be barred because they have failed to respond appropriately to Plaintiffs' discovery requests. Plaintiffs argue that Governmental Defendants should not be permitted to introduce evidence that contract documents were not genuine, that Tradco, Inc. did not incorporate in Nigeria for the purpose of securing contract benefits,[6] that the purported representatives of Nigeria were not in fact official representatives or employees of Nigeria, and that the contract documents are inconsistent with official Nigerian contract procedures. Plaintiffs have also complained that discovery has been unduly limited in that they have not been allowed necessary discovery, such as information from NNPC engineers who worked on pipeline issues during the contract period.

---

**6.** As explained later, whether or not Tradco, Inc. incorporated is not ultimately important, in light of the failure of Plaintiffs to present any evidence that they had personal knowledge that the persons with whom they dealt by correspondence and telephone calls were in fact officials or employees of Nigeria.

■ Upon reflection of these arguments, they are wholly rejected. First of all, the Court regards the limitations on discovery imposed as wholly proper under Rule 26. Rule 26(b)(2) expressly permits federal courts to limit discovery when "the burden or expense of the proposed discovery outweighs its likely benefit. . . ." The Court regards the limitations placed on discovery by Magistrate Scoville as appropriate in light of the issues pertinent to this case. The mere hope that additional discovery may give rise to winning evidence does not warrant the authorization of wide-ranging fishing expeditions. *See Ameristar Jet Charter, Inc. v. Signal Composites, Inc.*, 244 F.3d 189, 192–93 (1st Cir.2001).

■ Furthermore, Plaintiffs arguments are completely oblivious to the established procedures for challenging discovery abuses. Rule 37 authorizes sanctions when a party ignores discovery obligations. In this case, the record supports the reasoning behind orders failing to impose discovery sanctions on the Governmental Defendants. As for issues not raised under Rule 37, the failure to timely raise discovery non-compliance under Rule 37 constitutes a waiver of such rights. *See Choate v. Nat'l R.R. Passenger Corp.*, 132 F.Supp.2d 569, 574 (E.D.Mich.2001).

Likewise, Rule 56(f) includes a specific procedure for parties who wish to demonstrate that they have not been afforded a fair opportunity to discovery. Under the language of Rule 56 and the case law of this Circuit, a party urging that discovery has been insufficient must file a specific affidavit establishing that "the party cannot for reasons stated present by affidavit facts essential to justify the party's opposition." Rule 56(f); *Klepper*, 916 F.2d at 343; *Plott*, 71 F.3d at 1196. Because Plaintiffs have not complied with these procedures and because they have not sufficiently shown that discovery has been insufficient, relief is not warranted.

### 2. Sovereign Immunity and Subject Matter Jurisdiction

■ Both parties have made arguments concerning subject matter jurisdiction pursuant to the Foreign Sovereign Immunities Act of 1976 ("FSIA"), 28 U.S.C. §§ 1330, 1332(a)(2)-(4), 1391(f), 1441(d), and 1602–1611 *et seq.* The parties, in their briefing, agree that the exercise of jurisdiction over a foreign sovereign, including Governmental Defendants, is limited to those instances expressly permitted by the FSIA. Such agreement is consistent with the Supreme Court's holding in *Argentine Republic v. Amerada Hess Shipping Corp.*, 488 U.S. 428, 434, 109 S.Ct. 683, 102 L.Ed.2d 818 (1989) that the FSIA is "the sole basis for obtaining jurisdiction over a foreign state in our courts." The FSIA also, generally, preserves the sovereign immunity of foreign sovereigns in the federal courts with certain exceptions explicitly authorized in the statute. *Id.* at 434–35, 109 S.Ct. 683 (quoting *Verlinden B.V. v. Cent. Bank of Nigeria*, 461 U.S. 480, 493, 103 S.Ct. 1962, 76 L.Ed.2d 81 (1983)).

In the instant suit, Plaintiffs seek to establish subject matter jurisdiction pursuant to 28 U.S.C. § 1605(a)(2). This subsection creates the following exception to sovereign immunity:

> that a foreign state shall not be immune from the jurisdiction of courts of the United States or of the States in any case in which the action is based upon a commercial activity carried on in the United States by the foreign state; or upon an act performed in the United States in connection with a commercial activity of the foreign state elsewhere; or upon an act outside the territory of the United States in connection with a commercial activity of the foreign state

elsewhere and that act causes a direct effect in the United States.

28 U.S.C. § 1605(a)(2).

 The terms "commercial activity" are defined under the FSIA as "either a regular course of commercial conduct or a particular commercial transaction or act." 28 U.S.C. § 1603(d). Under the statute, the commercial character of an activity is to be determined by reference to the nature of the course of conduct or particular transaction or act, rather than by reference to its purpose. "A single commercial act, such as negotiating or entering into a contract, is sufficient to trigger the exception if the act is of the type that a private person would customarily engage in for profit." *Gould, Inc. v. Pechiney Ugine Kuhlmann*, 853 F.2d 445, 452–453 (6th Cir.1988); *Adler v. Fed. Republic of Nigeria*, 107 F.3d 720, 724 (9th Cir.1997). For example, the Sixth Circuit held in *Keller v. Central Bank of Nigeria*, 277 F.3d 811 (6th Cir.2002) that a contract for the sale of medical mobile units to officials of the CBN fell within the third clause—since it involved a contract to be performed in Nigeria with an American company and the failure of the American company to receive payment at its Cleveland, Ohio bank constituted a direct commercial effect within the United States.

As discussed in *Keller*, contracts which are performed in a foreign country require as an additional element of proof that the commercial activity cause a direct effect in the United States. *Id.* (citing cases). Therefore, for subject matter jurisdiction relating to a contract to supply technical information to persons in Nigeria, Plaintiffs must show that the commercial activity involved had a direct commercial effect in the United States. *See also Saudi Arabia v. Nelson*, 507 U.S. 349, 359, 113 S.Ct. 1471, 123 L.Ed.2d 47 (1993) (holding that activities subject to analysis are only those activities of the sovereign as a "private player" in commercial activity). While a failure to receive payment in the United States would constitute a direct commercial effect in the United States, this is pertinent to the present case only if the payment was promised by actual employees or officers of the Governmental Defendants or by persons acting with apparent authority created by conduct of Governmental Defendants.

 As explained above, Plaintiffs' theory of the case is that Government Defendants engaged in commercial activities in the United States and/or outside of the United States which caused a direct commercial effect in the United States when they entered into the contract in question and made other binding promises to Plaintiffs which were not fulfilled. Plaintiffs claim that this was done by agents of the Governmental Defendants with actual or apparent authority.

While this is a fine theory, the Court has winnowed the evidence and found only chaff. There is no admissible evidence offered by Plaintiffs (given their absence of personal knowledge of the affairs and personnel of the Nigerian Government) establishing that any of the commercial activity identified in the pleadings (including acts of contracting, soliciting payment, and fraud) were committed by agents or officers of the Governmental Defendants or even persons acting with apparent authority granted by the Governmental Defendants. This absence of evidence offered by Plaintiffs and the strong evidence of Governmental Defendants to the contrary entitles Governmental Defendants to summary judgment because of absence of subject matter jurisdiction in light of their sovereign immunity. Furthermore, even were they not sovereigns, Governmental Defendants would be entitled to summary judgment simply because there is no evidence on this record that they caused the

conduct and injuries described in Plaintiffs' First Amended Complaint.

What is left here is but a testament to the siren song of avarice. It is a pleasing and luxuriant song which causes even reasonable men to lose their senses. It is also a tragic one which takes the fortunes of noble listeners and tosses them to the ever-grasping hands of the unscrupulous. For all such sorrows, as the pervasiveness of the section 419 scams proves, this is a song which, though ancient, is still ringing in the ears of those who give it audience.

### CONCLUSION

For the reasons stated, the Court finds that Governmental Defendants are entitled to summary judgment on the issue of sovereign immunity from suit. A Partial Judgment shall enter consistent with this Opinion dismissing all claims against Governmental Defendants.