[Cite as *Natl. City Real Estate Serv. L.L.C. v. Shields*, 2013-Ohio-2839.]

**IN THE COURT OF APPEALS**

**ELEVENTH APPELLATE DISTRICT**

**TRUMBULL COUNTY, OHIO**

| | | |
|---|---|---|
| NATIONAL CITY REAL ESTATE SERVICES LLC SUCCESSOR BY MERGER TO NATIONAL CITY MORTGAGE INC., f.k.a. NATIONAL CITY MORTGAGE CO., | : | **O P I N I O N** |
| | : | |
| | : | **CASE NO. 2012-T-0076** |
| | : | |
| Plaintiff-Appellee, | : | |
| - vs - | : | |
| BRANDON S. SHIELDS a.k.a. BRANDON SHIELDS, et al., | : | |
| Defendant-Appellant. | : | |

Civil Appeal from the Trumbull County Court of Common Pleas, Case No. 2009 CV 01385.

Judgment: Affirmed.

*Natalia Steele* and *Lisa Babish Forbes,* Vorys, Sater, Seymour & Pease, LLP, 2100 One Cleveland Center, 1375 E. 9th Street, Cleveland, OH 44114 and *Julia E. Steelman*, Lerner, Sampson & Rothfuss, 120 E. Fourth Street, 8th Floor, Cincinnati, OH 452024 (For Plaintiff-Appellee).

*Philip Zuzolo* and *Patrick B. Duricy*, Zuzolo Law Office, LLC, 700 Youngstown-Warren Road, Niles, OH 44446 (For Defendant-Appellant).

COLLEEN MARY O'TOOLE, J.

{¶1} Appellant Brandon Shields appeals the judgment entry of the Trumbull County Court of Common Pleas, which granted the motion for summary judgment on

the foreclosure action filed by National City Real Estate Services. For the following reasons we affirm the judgment of the trial court.

{¶2} Appellant Brandon Shields ("Mr. Shields") purchased a home in McDonald, Ohio in 2004. National City Mortgage Company ("NCMC") originated Mr. Shields' loan on September 21, 2004. In 2008, Mr. Shields was laid off from his job, which substantially decreased his income. Additionally, Mr. Shields' father was diagnosed with cancer and Mr. Shields spent considerable time at his father's house providing care and transportation for medical appointments.

{¶3} Due to these factors, Mr. Shields was unable to make the required monthly payments on his loan in March, April or May 2009. Appellee National City Real Estate Services, LLC ("NCRES"), as successor by merger to National City Mortgage, Inc., fka National City Mortgage Co. ("NCMC") filed foreclosure proceedings against Mr. Shields in the Trumbull County Court of Common Pleas on May 21, 2009.

{¶4} In its complaint, NCRES alleges that it is the holder and owner of the note and mortgage. Copies of the note and mortgage are attached to the complaint. Mr. Shields received service of the foreclosure complaint on May 28, 2009, however Mr. Shields did not answer the complaint within the time allowed.

{¶5} Mr. Shields subsequently requested and received a reinstatement estimate from NCRES' foreclosure counsel via a letter dated July 8, 2009. The letter estimated that the amount necessary to reinstate Mr. Shields' loan through July 30, 2008 was $6,573.74. The letter states that the foreclosure fees and costs are an estimate and that past-due monthly payments and late fees alone total $3,283.55. On August 8, 2009 NCRES received a check from Mr. Shields for $3,200. On September 8, 2009 Mr. Shields' check was returned to him.

**{¶6}** NCRES moved for default judgment against Mr. Shields on September 9, 2009. Five days before the default judgment hearing, on October 21, 2009, Mr. Shields moved the trial court for leave to file his answer *instanter,* and was granted leave. NCRES moved for summary judgment on its complaint for the first time on November 18, 2009. Mr. Shields did not respond to NCRES' first motion for summary judgment, but instead requested mediation, propounded discovery on NCRES, and moved for additional time to oppose NCRES' summary judgment motion.

**{¶7}** In April 2010, Mr. Shields moved the trial court for leave to amend his answer to add a counterclaim and for additional time to respond to NCRES' motion for summary judgment. Mr. Shields received leave and filed his counterclaim on May 12, 2010. Mr. Shields' counterclaim consisted of three counts: one for violation of the Fair Debt Collections Practices Act ("FDCPA"); one for violation of the Ohio Consumer Sales Practices Act ("OCSPA"), and one for fraudulent misrepresentation. NCRES withdrew its motion for summary judgment and answered the counterclaim on July 29, 2010.

**{¶8}** The parties then engaged in mediation beginning in July 2010, continuing through December 2011. The parties' settlement efforts failed, and on April 20, 2012, NCRES, which had now merged with PNC Bank, filed its motion for summary judgment on its complaint and on Mr. Shields' counterclaim. Mr. Shields opposed NCRES' motion for summary judgment. NCRES replied in support of its motion. Mr. Shields requested and was granted leave to file a surreply to NCRES' motion, which he filed on August 8, 2012. The trial court granted NCRES' motion for summary judgment on August 21, 2012. Mr. Shields filed his notice of appeal on September 7, 2012.

**{¶9}** Mr. Shields assigns the following errors for our review:

3

{¶10} "[1.] The trial court erred in granting summary judgment to Plaintiff NCRES on the two counts of its complaint when the Appellee did not have standing to file the complaint, the Appellee breached the contract by charging excessive fees and costs, and equity demanded that the foreclosure be denied.

{¶11} "[2.] Although the trial court granted Summary Judgment dismissing the Appellant's counterclaims without giving any reasoning, the Trial Court erred if it dismissed Appellant's claims under the Fair Debt Collection Practices Act by accepting Appellee's erroneous position that PNC and the named Appellee were not debt collectors under the Act and that Appellee's conduct in charging unreasonable fees for reinstatement of his mortgage did not violate the FDCPA.

{¶12} "[3.] Although the trial court granted Summary Judgment dismissing the Appellant's counterclaims without giving any reasoning, the trial court erred if it dismissed Appellant's claims under the Ohio Consumer Sales Practices Act ORC 1345.01 et seq. (OCSPA) by accepting the Appellee's argument that the OCSPA did not apply to the National City Real Estate Services, LLC and PNC.[1]

{¶13} "[4] Although the trial court granted Summary Judgment dismissing Appellant's fraudulent misrepresentation counterclaim without giving any reasoning, the trial court erred if it accepted the Appellee's argument that there were no false statements made in connection with the reinstatement and the Appellant did not justifiably rely on any statement."

{¶14} We review summary judgment rulings de novo, applying the same standard as the trial court. *Lorain Natl. Bank v. Saratoga Apts.,* 61 Ohio App.3d 127 (9th Dist.1989); *Grafton v. Ohio Edison Co.,* 77 Ohio St.3d 102, 105 (1996).  Under

---

1.  At oral argument of this case, and by motion filed thereafter, Mr. Shields withdrew his OCSPA claims.

4

Civ.R. 56(C), summary judgment is appropriate where (1) no genuine issue as to any material fact exists; (2) the moving party is entitled to judgment as a matter of law; and (3) reasonable minds can come to but one conclusion, and viewing the evidence most strongly in favor of the nonmoving party, that conclusion is adverse to the nonmoving party. *Harless v. Willis Day Warehousing Co. Inc.,* 54 Ohio St.2d 64 (1978).

{¶15} On a motion for summary judgment, the moving party has the burden of demonstrating that no genuine issue of material fact exists. *Dresher v. Burt,* 75 Ohio St.3d 280, 292 (1996). The moving party must point to some evidence in the record of the type listed in Civ.R. 56(C). *Id.* at 292-293. Under Civ.R. 56(C*)*, the evidence to be considered is limited to the "pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact, if any, timely filed in the action * * *." Nevertheless, the trial court may consider a type of document not expressly mentioned in Civ.R. 56(C) if such document is accompanied by a personal certification that it is genuine or is incorporated by reference in a properly framed affidavit pursuant to Civ.R. 56(E). See *Bowmer v. Dettelbach,* 109 Ohio App.3d 680, 684 (6th Dist.1996). The burden then shifts to the nonmoving party to provide evidence showing that a genuine issue of material fact does exist. *Dresher* at 293; Civ.R. 56(E).

{¶16} To properly support a motion for summary judgment in a foreclosure action, a plaintiff must present evidentiary-quality materials showing: (1) the movant is the holder of the note and mortgage, or is a party entitled to enforce the instrument; (2) if the movant is not the original mortgagee, the chain of assignments and transfers; (3) the mortgager is in default; (4) all conditions precedent have been met; and (5) the

5

amount of principal and interest due. *Wachovia Bank v. Jackson,* 5th Dist. No. 2010-CA-00291, 2011-Ohio-3203, ¶40-45.

{¶17} In the first issue under his first assignment of error, Mr. Shields argues that the trial court erred in granting summary judgment since NCRES lacked standing as it was not the holder of the note at the time of the filing of this action in the trial court. In its appellee brief, NCRES states that Mr. Shields failed to properly raise this issue in the trial court and should not be allowed to raise it on appeal. Mr. Shields argues in his reply brief that subject matter jurisdiction can never be waived and may be challenged at any time.

{¶18} "It is well understood * * * that the lack of subject matter jurisdiction may be raised anytime." *Hunt v. Hunt*, 2d Dist. No. 93-CA-92, 1994 Ohio App. LEXIS 4831, at *6 (Oct. 28, 1994). The issue of standing can be raised at anytime during the pendency of the proceedings. *Fed. Home Loan Mtge. Corp. v. Schwartzwald*, 134 Ohio St.3d 13, 2012-Ohio-5017, ¶18. A review of the record shows that Mr. Shields raised NCRES' standing as an affirmative defense in his answer. And in his brief in opposition to NCRES' motion for summary judgment, Mr. Shields argued that his loan was sold to Freddie Mac and that Freddie Mac was the document custodian of his loan. Mr. Shields argued that Freddie Mac's ownership of his loan raised a genuine issue of material fact as to whether NCRES was the holder of the note at the time the foreclosure action was filed.

{¶19} Ohio's version of the Uniform Commercial Code ("U.C.C.") governs who may enforce a note. R.C. 1301.01 et seq. Article 3 of the U.C.C. governs the creation, transfer and enforceability of negotiable instruments, including promissory notes

6

secured by mortgages on real estate. *Fed. Land Bank of Louisville v. Taggart,* 31 Ohio St.3d 8, 10 (1987).

{¶20} The threshold requirement of standing depends upon whether the plaintiff has a real interest in the subject matter of the action. *State ex rel. Dallman v. Court of Common Pleas, Franklin Cty.,* 35 Ohio St.2d 176, syllabus (1973). In a foreclosure action, the holder of the note and mortgage is the real party in interest. *Deutsche Bank Natl. Trust Co. v. Greene,* 6th Dist. No. E-10-006, 2011-Ohio-1976, ¶13. *See also* R.C. 1303.31 (the holder of an instrument is a "person entitled to enforce" the instrument).

{¶21} A holder of the note and mortgage "[is] not additionally required to plead that it [is] the 'owner' of the note and mortgage in its complaint." *U.S. Bank, N.A. v. Coffey,* 6th Dist. No. E-11-026, 2012-Ohio-721, ¶18. Therefore, the standing issue centers on whether the plaintiff was the *holder* of the note and mortgage on the date the complaint was filed. R.C. 1301.201(B)(21)(a) defines a holder of a negotiable instrument as "[t]he person in possession of a negotiable instrument that is payable either to bearer or to an identified person that is the person in possession."

{¶22} In its memorandum in support of its motion for summary judgment, NCRES stated that it was the holder of the note and mortgage on the date the complaint was filed. To support this statement, NCRES attached an affidavit from Timothy Justice, a Default Litigation Coordinator for PNC Mortgage; the servicer of Mr. Shields' loan. In his affidavit, Justice stated that he had reviewed the note and the mortgage. Further, he stated that the note and mortgage attached to the motion for summary judgment are true and accurate copies of the original note and mortgage.

{¶23} Mr. Justice testified that National City Mortgage Company ("NCMC") loaned Mr. Shields the principal amount of $70,000.00 on September 21, 2004. NCMC

7

endorsed the note in blank. Mr. Justice then outlined the sequence of events and mergers whereby NCMC split into two separate entities on January 1, 2005: NCMC and National City Mortgage Inc. ("NCMI"). NCMI remained the originator of the loan and NCMC serviced the loan. According to Justice's testimony, NCMI (loan originator) merged with and into National City Real Estate Services (a wholly owned subsidiary of National City Bank) effective January 1, 2007. NCMC (loan servicer) merged with and into National City Bank ("NCB") effective October 1, 2008. NCB later merged with and into PNC on November 6, 2009. NCRES became a wholly-owned subsidiary of PNC at the time of the merger between NCB and PNC and then was dissolved as a corporate entity the next day.

**{¶24}** Mr. Justice testified that the original note and mortgage remained in possession of National City from the origination of Mr. Shields' loan until the merger with PNC. He further testified that after the merger of NCB with PNC, PNC took possession of the original note and mortgage and that these documents have remained in PNC's possession since.

**{¶25}** Freddie Mac's alleged ownership of the loan does not operate to prevent NCRES from instituting a foreclosure action if NCRES is the holder of the note. *Fuller v. Lerner, Sampson, Rothfuss, L.P.A.*, N.D. Ohio No. 10 CV 2453, 2012 U.S. Dist. LEXIS 135538 (May 14, 2012).

**{¶26}** Mr. Shields argues that as NCRES submitted two versions of the note in different pleadings, a genuine issue of material fact exists regarding NCRES' standing. As Mr. Shields has noted, the version of the note attached to the initial complaint and in the first motion for summary judgment contained no endorsement. In its second motion for summary judgment NCRES attached a copy of the note containing an endorsement

8

to "NATIONAL CITY MORTGAGE CO." Mr. Shields alleges that these "inconsistent" versions of the note are further evidence that NCRES did not have standing on the day the complaint was filed. We disagree.

{¶27} The documentary and testimonial evidence offered by NCRES shows a clear chain of custody of the note and mortgage from National City Mortgage Company (later named National City Mortgage Inc.) to National City Real Estate Services, LLC (a wholly owned subsidiary of National City Bank) finally to PNC Bank through the merger of NCB and PNC. Mr. Shields offers no evidence to refute NCRES' claim that a copy of the note was made *prior* to the endorsement and another copy was made *after* the endorsement. Additionally, Mr. Shields fails to explain how the existence of these two slightly-different versions of the note supports his claim that NCRES lacked standing to institute foreclosure proceedings.

{¶28} Mr. Shields also argues that as NCRES was dissolved after the merger of NCB and PNC, the trial court improperly granted summary judgment to an entity that no longer exists. NCRES correctly notes that R.C. 1701.88 provides that the dissolution of a corporation does not abate any claim, action or proceeding pending by the corporation. *State ex rel. Falke v. Montgomery Cty. Residential Dev.*, 40 Ohio St.3d 71 (1988).

{¶29} In the second issue presented under his first assignment of error, Mr. Shields avers that the trial court erred in granting NCRES summary judgment by failing to consider whether equity would prohibit the relief of foreclosure. Mr. Shields argues that foreclosure is an equitable remedy and that NCRES is not entitled to foreclosure because NCRES refused to accept his check for $3,200.00 and never informed him that

9

Freddie Mac requires that the servicer of a mortgage accept partial reinstatement for fees and costs.

{¶30} Mr. Shields claims that his tender of $3,200.00 to NCRES was sufficient to satisfy his arrearage. However, as NCRES points out, this amount (even if sufficient to pay the arrearage) was insufficient to cover the late charges, foreclosure fees and other costs. These charges are all outlined in the mortgage at paragraph 19. And Shields cites to no mortgage provision or authority to support his argument that NCRES acted inequitably by failing to accept his offer.

{¶31} The Freddie Mac servicing guidelines that Mr. Shields attached as an exhibit were obtained from an internet site. As such these guidelines are hearsay and inadmissible in a motion for summary judgment. *Tolliver v. Fed. Republic of Nigeria*, 265 F.Supp.2d 873, 879 (W.D.Mich.2003). However, even if these guidelines had been properly introduced as evidence, Mr. Shields cannot establish that the guidelines were intended to benefit him. The servicing guidelines exist between Freddie Mac and the financial institutions that service the loans. The guidelines do not exist for the benefit of the borrowers. *Wells Fargo Bank, N.A. v. Sinnott*, No. 2:07CV169, 2009 U.S. Dist. LEXIS 94226, 16, 27-31 (D. Vt. Aug 17, 2009); *Citimortgage, Inc. v. Carpenter*, 2d Dist. No. 24741, 2012-Ohio-1428 ¶14-16.

{¶32} In the third issue presented under his first assignment of error, Mr. Shields claims that NCRES materially breached the contract between them by charging him unreasonable and unearned fees and costs as a condition of reinstatement. Mr. Shields alleges that the charges assessed to his loan, according to NCRES' own tally, only amounted to $1,716.00—yet NCRES demanded $2,993.00 in costs and fees to reinstate his mortgage. Mr. Shields maintains that these fees were demonstrably

10

unreasonable and that NCRES' refusal to reinstate the loan without full payment of these fees amounted to a material breach of the contract which excused Shields' performance.

{¶33} NCRES states that the $2,993.00 fee included over $2,400.00 in costs to date, with an additional $500.00 reserved for future service expenses. NCRES properly cites to the record indicating where these figures can be found. Mr. Shields' citations to the record do not match the numbering established by the Clerk of Courts for the trial docket in this matter. Therefore, Mr. Shields claim that NCRES' charges exceeded the actual costs by $1,300.00 cannot be confirmed without this court scouring the record—which it is not required to do. *Hammond v. Cleveland*, 8th Dist. No. 97174, 2012-Ohio-494, ¶24; *see also* App.R. 12(A)(2) and 16(A)(7). Regardless, the letter from NCRES' attorneys clearly states that the costs are only an estimate and that any overage would be sent back to NCRES for further handling.

{¶34} Payment of foreclosure expenses as a condition of reinstatement is a reasonable requirement by the lender. *Washington Mutual Bank v. Mahaffey*, 154 Ohio App.3d 44, 2003-Ohio-4422 (2d Dist.2003). Despite Mr. Shields' statement that he was "ready, willing and able to pay all reasonable charges that were due under the contract," the record in this case contains no offer made by him regarding the payment of foreclosure expenses. And Mr. Shields' tender of $3,200.00 in August 2009 was insufficient to cover even his past-due mortgage payments.

{¶35} Additionally, a material breach is one that makes performance by the other party impossible. Mr. Shields fails to explain how the alleged $1,300.00 overcharge made it impossible for him to perform his part of the contract.

{¶36} Mr. Shields' first assignment of error is without merit.

11

{¶37} Mr. Shields' second and fourth assignments of error are based upon his speculation as to why the trial court might have granted NCRES summary judgment regarding the issues raised in his counterclaim. Mr. Shields admits the trial court made no written finding regarding these claims. As these assignments all involve Mr. Shields' speculation, rather than a written finding, we will address them together. In these assignments of error Mr. Shields states that the trial court erred in granting summary judgment to NCRES *if* the trial court:

{¶38} Accepted NCRES' position that it is not a debt collector under the Fair Debt Collection Practices Act ("FDCPA") (Second Assignment of Error, First Issue);

{¶39} Accepted NCRES' argument that Shields did not present evidence that the fees and costs required to reinstate his mortgage were unreasonable (Second Assignment of Error, Second Issue);

{¶40} Accepted NCRES' position that the reinstatement quote did not contain a false statement regarding the amount of fees and costs necessary to reinstate the loan (Fourth Assignment of Error, First Issue);

{¶41} Accepted NCRES' argument that Shields did not justifiably rely on NCRES' fraudulent misrepresentation regarding the fees and costs necessary to reinstate the loan (Fourth Assignment of Error, Second Issue).

{¶42} Pursuant to Civ.R. 52, a trial court is not required to make findings of fact or conclusions of law when ruling on a motion for summary judgment. *Portfolio Recovery Assoc. v. Dahlin*, 5th Dist. No. 10-CA-000020, 2011-Ohio-4436, ¶57. Further this court is not required to search the record for evidence supporting an appellant's argument. *Hammond, supra, at* ¶24; *see also* App.R. 12(A)(2) and 16(A)(7). Mr. Shields could have requested that the trial court issue findings of fact and conclusions

12

of law so that this court could determine if the trial court had improperly accepted NCRES' arguments regarding the issues raised in his counterclaim.

{¶43} Absent the trial court's written finding, Mr. Shields' speculation as to the trial court's actions remains just that: speculation. Without a proper record, addressing these assignments of error would be tantamount to issuing an advisory opinion, which is not the role of this court. *State ex rel. White v. Kilbane Koch*, 96 Ohio St.3d 395, 2002-Ohio-4848. Mr. Shields' second and fourth assignments of error are without merit.

{¶44} For the reasons stated in the opinion of this court, the judgment of the Trumbull County Court of Common Pleas is affirmed. It is ordered that appellant is assessed costs herein taxed. The court finds there were reasonable grounds for this appeal.


TIMOTHY P. CANNON, P. J.,

DIANE V. GRENDELL, J.

concur.

13